Claudette PERRY, Appellant,

v.

Mary Ellen SERA, Appellee.

No. 91–CV–1059.

District of Columbia Court of Appeals.

Argued Dec. 2, 1992.
Decided April 30, 1993.

B. Milele Archibald, Washington, DC, for appellant.

Richard L. Lyon, Rockville, MD, with whom Robert G. Schoshinski, Washington, DC, was on the brief, for appellee.

Before STEADMAN, SCHWELB and KING, Associate Judges.

STEADMAN, Associate Judge:

Appellant, Claudette Perry, challenges the pretrial dismissal of her complaint against appellee, Mary Ellen Sera, for failure to make discovery responses, and the denial of a motion for reconsideration of that dismissal. Appellant argues that the trial court abused its discretion in dismissing the complaint in that 1) the trial court could not sanction appellant under Super.Ct.Civ.R. 37 unless there was first a violation of a motion to compel discovery; 2) there were no circumstances in this case severe enough to warrant dismissal; and 3) the trial court failed to consider lesser sanctions. We disagree with appellant's contentions and therefore affirm.

## I.

Appellant initiated this lawsuit on May 2, 1990, alleging that, almost three years previously, on May 14, 1987, appellee's dog attacked her, causing various injuries. An initial order was issued by the trial court which among other things set up an initial scheduling conference on September 7, 1990, to establish a schedule for the completion of all pretrial matters. Appellee filed an Answer, a Request for Production of Documents and a set of Interrogatories on June 14, 1990. At the time of the September 7, 1990 conference, appellant still had not produced the documents or responded to the interrogatories.[1] The court ordered appellant to file answers to the interrogatories and to produce the documents within two weeks of the scheduling conference subject to sanctions or dismissal for noncompliance. The court also issued a Scheduling Order setting forth the timing of discovery and other matters for the period prior to pretrial conference.[2] Appellant filed answers to the Interrogatories and a response to the Request for Production of Documents after the two week time limit had passed. Thereafter, further discovery was conducted by the parties.

On March 1, 1991, appellee filed a Motion for Sanctions against appellant, asserting the failure of appellant to respond to discovery requests and asking the court either to dismiss appellant's complaint or to pro-

hibit appellant from introducing expert testimony or testimony or records concerning appellant's medical or dental history. Appellee asserted that she did not have appellant's full and complete medical and dental records and could not properly and adequately prepare for trial. She stated that she had been seeking such records for a considerable length of time[3] and that appellant had obviously failed to cooperate with her attorney in providing the requested items.

In support of her assertions, appellee attached two letters her attorney had written to appellant's attorney, Alan J. Ackerman. The first, dated December 27, 1990, requested various information that appellant had been unable to provide in her deposition. This included information on rehabilitative programs, health care providers and dentists, the details of litigation concerning earlier car accidents appellant was involved in and supplemental answers to the interrogatories on experts. The second letter, dated January 11, 1991, stated that, as Mr. Ackerman was aware, appellee's attorney had been "attempting for several months to obtain complete medical and dental records" regarding appellant's claim. Despite these efforts, appellant had "steadfastly failed and refused to produce and furnish all of her relevant medical and dental records despite both formal discovery requests and informal requests as

---

1. Super.Ct.Civ.R. 33 allows thirty days for a party to answer interrogatories under these circumstances. Likewise, Super.Ct.Civ.R. 34 allows thirty days to respond to a request for the production of documents.

2. This order stated,

 This ORDER is your official notice of dates and required Court appearances. Failure to comply with all terms may result in dismissal, default judgment, refusal to let witnesses testify, refusal to admit exhibits, or other sanctions, including the assessment of costs and expenses, including attorney fees.

 The order created a schedule for discovery deadlines including a deadline for discovery requests of November 7, 1990, a date for the close of discovery on January 7, 1991, and a deadline for filing motions on January 22, 1991. It also set deadlines for the exchange of witness lists and the furnishing of statements under Rule 26(b)(4) and established a time for mediation

and a subsequent pretrial conference. *See* Super.Ct.Civ.R. 16(b).

3. Subsequent to the initial round of discovery, appellee found out that appellant was alleging that she suffered from temporomandibular joint dysfunction ("T.M.J.") as a result of the dog incident. Additionally, appellee learned from interrogatory answers that appellant had been in several accidents before and after the dog incident, at least one of which involved neck and back injuries which could be relevant to appellant's claims of neck and back injuries from the dog incident. Appellee thus requested all medical records from all health care providers who treated appellant as a result of the dog incident and from any physical therapy programs which she attended. Appellee also requested medical and dental records predating the dog incident and all records of accidents in which appellant was involved both before and after the dog incident.

well." In the letter, appellee's attorney offered to assist appellant by sending an authorization form for medical records so he could attempt to get some of the information himself. He reminded appellant that "[i]t is the obligation of the Plaintiff to furnish the requested discovery" and warned that if the request was not satisfied, he would "file the appropriate motion with the Court in an effort to limit and exclude certain matters at trial."

Additionally, appellee attached as evidence of appellant's own personal disregard of discovery requests letters that had been given to the trial court by Mr. Ackerman when he moved to withdraw as counsel for appellant on February 15, 1991.[4] These letters indicate that appellant was repeatedly asked for information concerning her medical and dental health providers that had been requested by appellee. One letter indicates that appellant was seeking, and perhaps had found, a new doctor but had not informed her own attorney, much less appellee. At one point, Mr. Ackerman warned appellant that "your lack of cooperation and our inability to communicate hurts your case."

Additionally, letters dated January 31 and February 8, 1991, (well past the close of discovery)[5] from Mr. Ackerman to appellee's attorney revealed the names of three additional dentists that appellant had seen. In the Motion for Sanctions, appellee asserted that the medical and dental records were "absolutely critical to the issues of the instant case and in particular to [appellant's] claims that she suffers from T.M.J. Syndrome as a result of the incident of May, 1987." Due to appellant's providing the names of the dentists so far past the discovery deadline, appellee had no opportunity to obtain records from or depose them.

Appellant, through her second attorney, filed on March 27, 1991, an unopposed Motion for Extension of Time to respond to the Motion for Sanctions.[6] In the motion, appellant asked to be permitted to file an opposition "on or before April 1, 1991." However, no opposition was in fact filed. On April 3, 1991, the trial court granted appellee's Motion for Sanctions with respect to which no grounds for denial had been presented[7] and dismissed appellant's complaint "for failure to make appropriate discovery responses thereby prejudicing

4. In that motion Mr. Ackerman alleged that appellant had retained his law firm shortly after the incident with the dog and had failed to cooperate in the prosecution of her claim by not advising counsel when she had new health care providers and not providing a list of those she had seen in the past even with "frequent reminders." He stated that appellant was continually "nonresponsive" to requests for information necessary to comply with discovery obligations and court imposed deadlines. Even after the trial court's order of September 7, 1990, it took "frequent telephone calls and more than a couple of broken appointments" to meet with appellant to complete the interrogatories. A similar situation occurred with preparing witness lists. Counsel could not get appellant to follow up on discovery requests, ultimately concluding that she did not "evidence[ ] any intention of preparing for trial." Because of appellant's attitude, other deadlines were not met. The motion to withdraw was granted on March 4, 1991.

5. In her opposition to appellant's Motion for Reconsideration, appellee noted that the trial court's Memorandum and General Order provided that

All counsel and all parties must take the necessary steps to complete discovery and pre-

pare for trial within the time limits established by the Court's scheduling order. Time limits set by the Court may only be extended by Court Order.... The Court anticipates denying Requests For Continuances, absent a showing of exceptionally compelling circumstances.

6. This motion was itself untimely since any opposition to appellee's Motion for Sanctions was due by March 11, 1991, without an extension by the court. See Super.Ct.Civ.R. 6 & 12–I(e).

7. In her opposition to appellant's Motion for Reconsideration, appellee pointed out that the Memorandum and General Order specifically addressed the matter of unopposed motions. Section VI.A of that Order provided,

A. *Form; Failure To Timely Oppose*
The form of all motions and oppositions shall be in accordance with [Super.Ct.Civ.R.] 12–I(e). Unless an opposition is filed within the time allowed by rule ..., or such additional time as the Court may allow, the Court will treat the motion as conceded.
Super.Ct.Civ.R. 12–I(e) gives the court the option of treating an unopposed motion as conceded.

the defendant's ability to defend herself against the plaintiff's suit for damages." [8]

On April 17, 1991, appellant filed a Motion for Reconsideration of the order dismissing her complaint. In that motion, appellant argued many of the legal points that she argues on appeal. Appellant asserted that many of the documents requested by appellee had been produced by the time the motion was filed and that the documents not produced were difficult to get due to their age. She argued that the trial court should have conducted a hearing before dismissing the claim and that she was denied due process in that she was not given notice that her claim was in danger of dismissal. She stated that of the various particularized items that appellant's new counsel was informed were missing, several had already been obtained (although not sent to appellee) and others were being sought.

Appellee filed an Opposition to Motion for Reconsideration on April 26, 1991. She stressed that the Motion for Sanctions was unopposed (even after appellant's request for more time) and therefore the court's Memorandum and General Order authorized treating the motion as conceded. See note 6, *supra*. She asserted that appellant was warned by the Motion for Sanctions and the Rules of Superior Court that her complaint could be dismissed. Appellee argued that appellant had treated the entire process of the lawsuit cavalierly and without regard for the rules. This attitude was evident in the way she handled the Motion

for Sanctions as well. Appellee listed ten specific discovery items that had been requested and still not produced by appellant despite assurances over time that they would be.[9] Appellee noted that dental records, critical to defending the claim that appellant suffered from T.M.J., had not been produced—even to appellant's treating physician. The trial court denied the Motion for Reconsideration on August 13, 1991, and appellant appealed on September 10, 1991.

## II.

■ Initially, there is an issue whether we have jurisdiction to hear this appeal. Appellee argues that, because appellant designated an order on the Notice of Appeal which itself is not appealable, the appeal must fail. Indeed, on the Notice of Appeal, appellant wrote in the space for the "Description of judgment or order" that she was appealing from the denial of the "Motion for Reconsideration of Order dismissing complaint." [10] However, on the very next line where appellant was to indicate the "Issues to be presented by appellant on appeal," she presented the exact issue that she wishes this court to address: "whether trial court abused its discretion in dismissing complaint and denying Motion to reconsider his decision." [11]

■ D.C.App.R. 3(a), as amended in 1985, see note 13, *infra*, contains few formal requisites for a notice of appeal, but

---

8. The trial court drew a line through the portion of the order prepared by appellee which gave the alternative sanction of prohibiting evidence.

9. These included all of appellant's medical and dental records for the five years preceding the dog incident; records and information from a D.C. rehabilitation program appellant attended in 1990; information and records from four different doctors and from a physical therapy provider; information concerning appellant's 1987 car accident; supplemental answers to the expert witness interrogatory including the substance of findings and opinions of each expert witness and the final alleged disability rating from appellant's principal treating physician. Appellee contends on appeal that these same documents have never been produced.

10. The denial of a Motion for Reconsideration, by itself, is not an appealable order. *Jones v. American Express Co.*, 485 A.2d 607, 609 n. 4 (D.C.1984); *901 Corp. v. A. Sandler Co.*, 254 A.2d 411, 412 (D.C.1969). However, if a Motion for Reconsideration has tolled the timing requirements for an appealable order, and an appeal is timely noted following the denial of the Motion for Reconsideration, both the appealable order and the Motion for Reconsideration may be reviewed. *Wallace v. Warehouse Employees Union # 730*, 482 A.2d 801, 810 (D.C.1984).

11. Indeed, the only issue in the Motion for Reconsideration was the appropriateness of the dismissal of the underlying claim and it was clear when appellant appealed this denial that her only real concern was the dismissal of her complaint.

among them is the requirement that the notice "shall designate the judgment, order or part thereof from which appeal is taken." An appellant should take pains to be precise in this regard. Appeals to this court may jurisdictionally be taken only from "final" judgments and orders and certain limited interlocutory orders. D.C.Code § 11–721 (1989).[12] Moreover, it may be that in litigation two or more potentially appealable orders will be entered. In such a case, the notice of appeal serves to indicate the one in fact appealed. *See, e.g., Weaver v. Grafio,* 595 A.2d 983 (D.C.1991) (substantive judgment appealable although motion for Rule 11 sanctions not yet resolved).

■ However, this court has never indicated that an appellant must always be impeccably precise in meeting D.C.App.R. 3(a)'s requirement to designate the judgment or order appealed from in order for jurisdiction to exist. Looking at the interpretation of FED.R.APP.P. 3(c), which has identical language requiring designation, we think that the rule should not be so stringently construed as to bar an appeal where, as here, it is clear from the face of the Notice of Appeal that appellant was seeking review of the underlying judgment dismissing her claim as well as the denial

of the Motion for Reconsideration. *See Waverly Taylor, Inc. v. Polinger,* 583 A.2d 179, 183 n. 6 (D.C.1990) (noting the federal courts' liberal interpretation of Rule 3(c)) [13]; *Meehan v. County of Los Angeles,* 856 F.2d 102, 105 (9th Cir.1988) (a mistake in designating the judgment appealed from should not bar appellate jurisdiction so long as the intent to appeal the particular judgment can be inferred and the appellee is not prejudiced or misled); *Cardoza v. Commodity Futures Trading Comm'n,* 768 F.2d 1542, 1546 (7th Cir.1985) (same).[14]

### III.

■ Appellant argues that a court may not impose sanctions under Super.Ct.Civ.R. 37(b) [15] unless the aggrieved party first moves for a motion to compel and receives an order compelling discovery under Rule 37(a). We disagree. Super.Ct.Civ.R. 37 provides remedies for the failure of parties to make or cooperate in discovery. Subsection (a) describes the procedures for a party to make a motion for an order by the court compelling another party to comply with discovery requests. Subsection (b)(2) gives the court a range of sanctions to impose on parties that do not comply with court orders concerning discovery.[16] This

---

**12.** The question of what orders and judgments can be appealed should not be confused with the issue of what matters may be reviewed in connection with such an appeal. See, e.g., note 10, *supra.*

**13.** Footnote six of the *Waverly* opinion cites *Coleman v. Lee Washington Hauling Co.,* 388 A.2d 44, 45 n. 1 (D.C.1978). However, *Coleman* was decided before the appellate rules required designation of the judgment or order appealed from in the Notice of Appeal. The Rules of the District of Columbia Court of Appeals added the designation requirement in 1985. *See also Wallace, supra* note 10, 482 A.2d at 810 n. 26 (1984 case finding that designation on the Notice was not dispositive and allowing appeal of both a Motion for Reconsideration and the underlying judgment when only the Motion for Reconsideration was noted on the Notice of Appeal).

**14.** On another jurisdictional issue, it is clear that the Motion for Reconsideration, filed on April 17, 1991, tolled the timing requirement for filing a Notice of Appeal from the April 3, 1991, dismissal of appellant's claim under D.C.App.R. 4(a). Since the Motion for Reconsideration

sought varied relief covered by both Super.Ct.Civ.R. 59 and 60, it is treated as a Rule 59 motion for tolling purposes. *See Vincent v. Anderson,* 621 A.2d 367 (D.C.1993). Moreover, applying the method of calculating the ten day deadline adopted in *Wallace, supra* note 10, 482 A.2d at 805–10, the deadline for filing the motion was April 18, 1991.

**15.** The trial court did not indicate under what rule it was dismissing the complaint. Appellee asserts that the dismissal could be upheld under one of various rules including Super.Ct.Civ.R. 16, 37 or 41. However, of these, only Rule 37 was listed in appellee's Motion for Sanctions. Thus, we decide this case assuming that the court used Rule 37 to dismiss.

**16.** Pertinent to this case, Rule 37(b)(2)(C) provides:

> (b) **Failure to comply with order.**
> (2) Sanctions by this Court. If a party ... fails to obey an order to provide or permit discovery, including an order made under subparagraph (a) of this Rule or Civil Rule 35, or if a party fails to obey an order entered

section states that sanctions may be imposed if "a party ... fails to obey **an order to provide or permit discovery, including** an order made under subparagraph (a) of this Rule **or** Civil Rule 35, *or if a party* fails to obey an order entered under Civil Rule 26(f) [should correctly read 26(g)[17]." Super.Ct.Civ.R. 37(b)(2) (emphasis added). Thus, by its own terms, the Rule does not limit itself to allowing sanctions only when an order compelling discovery under Rule 37(a) has been made.

◼ Commentators and caselaw likewise provide support for our conclusion that an order compelling discovery under Rule 37(a) is not a prerequisite to sanctions under Rule 37(b). In interpreting FED. R.CIV.P. 37(b)(2), which has nearly identical language to our rule, Professors Wright and Miller state that:

> Rule 37(b) provides comprehensively for sanctions for failure to obey discovery orders. It makes specific reference to orders on motions under Rule 37(a) to compel discovery and to orders on motions under Rule 35 for a physical or mental examination [and also now to Rule 26(f)] but it refers also to any "order to provide or permit discovery" and thus makes these sanctions available to orders against a party having this effect regardless of what rule they were made under.

8 CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE,

§ 2289 (1970 and 1992 Supp.). Likewise, federal caselaw supports the proposition that a court can impose sanctions even in the absence of a motion to compel. *See, McLeod, Alexander, Powel & Apffel, P.C., v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990) (rule 37(b) sanctions can be imposed even without an existing order to compel); *Properties Int'l Ltd. v. Turner,* 706 F.2d 308, 310 (11th Cir.1983) (no requirement that a party move for an order to compel discovery before sanctions can be imposed); *An–Port, Inc. v. MBR Indus., Inc.,* 772 F.Supp. 1301, 1306 (D.P.R.1991) ("We may impose the sanctions even in the absence of a motion to compel.").[18]

Although a motion to compel is not necessary before a court may impose Rule 37(b) sanctions, we recognize that **an order of the court** is a prerequisite to such sanctions. *See Henneke v. Sommer,* 431 A.2d 6, 8 (D.C.1981) ("sanctions can be imposed only upon failure to comply with an order of the court"); 8 WRIGHT & MILLER, *supra,* § 2289 ("Rule 37(b) has no application if there has not been a court order."). The issue thus becomes whether the type of order present in this case, *i.e.,* a scheduling order dictating when various discovery must be completed and when discovery is closed, invokes the sanctions available under Rule 37(b)(2). We hold that it does.[19]

Super.Ct.Civ.R. 26(g) deals with discovery conferences and provides in part that

> [t]he Court may enter an order tentatively identifying the issues for discovery

---

under Civil Rule 26(f) [ (g) ], the Court may make such orders in regard to the failure as are just, and among others the following:
. . . .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;. . . .

**17.** The incorrect reference to 26(f) is explained by the fact that FED.R.CIV.P. 37(b)(2), upon which Super.Ct.Civ.R. 37(b)(2) is based, refers to their Rule 26(f). However, the Superior Court rule corresponding to FED.R.CIV.P. 26(f) is in fact Rule 26(g).

**18.** If the discovery procedure is set in motion by the parties and not court order, an order compelling discovery may be necessary before Rule

37 sanctions are available. *See Schleper v. Ford Motor Co., Automotive Div.,* 585 F.2d 1367, 1371 (8th Cir.1978); *Drummond v. Walker,* 643 F.Supp. 190, 191 n. 2 (D.D.C.1986), *aff'd* 274 U.S.App.D.C. 70, 861 F.2d 303 (1988); 8 WRIGHT & MILLER, *supra,* § 2282.

**19.** Additionally, at the September 7, 1990, scheduling conference, the trial court ordered appellant to comply with appellee's discovery requests (that were already late) within two weeks or suffer potential sanctions. This is clearly "an order to provide ... discovery" and thus it satisfies the requirements of Rule 37(b)(2) and appropriate sanctions could have been applied for non-compliance. Apparently, appellant ultimately complied with this order but only after the two weeks passed. This delinquency could properly be considered by the trial court in connection with the other failures to provide discovery in considering whether to dismiss.

purposes, establishing a plan and schedule for discovery, setting limitations on discovery, if any; and determining such other matters, including the allocation of expenses, as are necessary for the proper management of discovery in the action.... The Court may combine the discovery conference with the scheduling conference or the pretrial conference authorized by Rule 16.

Rule 37(b)(2) itself provides that sanctions are available "if a party fails to obey an order entered under Civil Rule 26(f) [ (g) ]." Thus, by the terms of Rule 37(b), its sanctions apply. Additionally, the comment to the 1980 Amendment to Federal Rule 37 states:

New Rule 26(f) provides that if a discovery conference is held, at its close the court shall enter an order respecting the subsequent conduct of discovery. The amendment provides that the sanctions available for violation of other court orders respecting discovery are available for violation of the discovery conference order.[20]

Lastly, we note that federal courts have found that a party who disobeys a discovery scheduling order is properly subject to Rule 37 sanctions. *See McLeod, Alexander, Powel & Apffel, P.C., supra,* 894 F.2d at 1485 (docket control order which required discovery to be completed by a certain date and warned that Rule 37 sanctions could be imposed was sufficient order to invoke Rule 37 sanctions); *United States of America ex rel Wiltec Guam, Inc. v. Kahaluu Constr. Co.,* 857 F.2d 600, 602 (9th Cir.1988) (recognizing that Rule 37(b)(2) sanctions apply to discovery schedule orders); *Parkway Gallery Furniture, Inc. v. Kittinger/Pa. House Group, Inc.,* 116 F.R.D. 363, 365 (M.D.N.C.1987) (recognizing that violation of scheduling orders may lead to dismissal of claims); *but see R.W. Int'l Corp. v. Welch Foods, Inc.,* 937 F.2d 11, 17–18 (1st Cir.1991) (broad form discovery order could not serve as Rule 37's "order to provide or permit discovery"

or Rule 34's governing of document production could be undermined).

## IV.

▆▆▆ Appellant also argues that the trial court abused its discretion by dismissing her complaint and by not granting her Motion for Reconsideration because the penalty was too harsh a sanction for the circumstances and because the court was required to, but did not, first consider lesser sanctions. We observe at the outset several basic principles governing appellate review. A judgment or order of any trial court is presumed to be valid, and the appellant bears the burden of convincing the appellate court that the trial court erred. *Cobb v. Standard Drug Co., Inc.,* 453 A.2d 110, 111 (D.C.1982) (quoting from *Harvey v. United States,* 385 A.2d 36, 37 (D.C.1978)); *see also Higgins v. Carr Bros. Co.,* 317 U.S. 572, 574, 63 S.Ct. 337, 338, 87 L.Ed. 468 (1943). In reviewing the two trial court orders in front of us, we look at each separately. In particular, we evaluate the granting of the Motion for Sanctions from the perspective of the trial judge, who had no grounds or argument for denial of the motion filed before him. We then evaluate the Motion for Reconsideration from the perspective of the trial judge who now had appellant's position before it, but was being asked to revisit a matter already decided. The standard of review in both instances is abuse of discretion. *See Wallace, supra* note 10, 482 A.2d at 810 ("The decision whether to grant or deny a motion to alter or amend judgment under Rule 59(e) lies within the broad discretion of the trial court."); *National Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (Rule 37 dismissal subject to abuse of discretion standard); *Braxton v. Howard Univ.,* 472 A.2d 1363, 1365 (D.C.1984) (language of Rule 37 makes clear that the decision to impose sanctions is left to the discretion of the trial court and will be

---

**20.** We note that the same result would occur if the order violated is treated as one made under Super.Ct.Civ.R. 16 which deals generally with pretrial scheduling, including discovery. Sub-

section (*l*) of that rule, by its own terms, invokes the sanctions in Rule 37(b)(2)(B), (C), and (D) "[i]f a party or a party's attorney fails to obey a scheduling or pretrial order."

reversed only if the court abuses its discretion by imposing a sanction too strict or unnecessary under the circumstances). However, inherently the trial judge had a broader degree of discretion in handling the Motion for Reconsideration after the original decision had already been made. That is to say, the trial judge was not required in the Motion for **Reconsideration** to give the matter full **de novo** review as if the original motion itself were before him.

 When a party has not complied with a pretrial discovery order, dismissal of a complaint is among the sanctions available to the trial court under Rule 37. *Ungar Motors v. Abdemoulaie,* 463 A.2d 686, 687 (D.C.1983). However, a trial court abuses its discretion by choosing dismissal if "severe circumstances" have not been shown which warrant dismissal. *Braxton, supra,* 472 A.2d at 1365. This court has evaluated two factors to see if "severe circumstances" exist: 1) whether the opposing party suffered any prejudice due to the failure to respond to discovery requests and 2) whether the failure was "willful"— defined as a conscious or intentional failure to act as opposed to accidental or involuntary noncompliance. *Id.* Additionally, there must be some indication that the trial court considered less severe sanctions than dismissal. *Id.* at 1366. The trial court is not required to state its reasons for choosing dismissal over less severe sanctions, although if a trial court fails to state its reasons, appellate scrutiny of that choice will be stricter. *Ungar Motors, supra,* 463 A.2d at 689; *see also Lyons v. Jordan,* 524 A.2d 1199, 1202 (D.C.1987) (where trial court was aware of previous court orders and sanctions which had been entered without effect, failure to explicitly explain the rejection of lesser alternatives did not warrant reversal).

This court evaluates all pretrial proceedings prior to the sanction when reviewing the lower court's actions. *Hackney v. Sheeskin,* 503 A.2d 1249, 1252 (D.C.1986) (citing *Vernell v. Gould,* 495 A.2d 306, 311 (D.C.1985)). After reviewing the history of

this case, we do not find an abuse of discretion in the trial court's actions.

**A.**

First, we look at the dismissal itself. As stated above, we evaluate this decision from the perspective of the trial court at the time of the decision. Here, the court had only the record in the case and appellee's allegations in front of it. From that perspective, we look to see if the standards for dismissal set out by our cases have been met.

 The trial court could properly find that appellant's noncompliance with the discovery orders issued in the case was willful. The record showed a conscious failure by appellant to provide the requested documents and information (as opposed to accidental noncompliance), as evidenced by the letters from appellant's first attorney, Mr. Ackerman, to appellant which repeatedly asked for information requested by appellee. Appellant knew exactly what information was being sought, and yet she did not cooperate with her attorney in providing the information. Additionally, this was information critical to her claim and to appellee's defense, to which only appellant herself had access and which only she could authorize to be released—in particular, the names of and records from various doctors, dentists and rehabilitation programs she had used. This being a suit for personal injuries, appellant knew or should have known that the defendant would need this information; indeed, appellant might very well need it to prove her own claim.

 It is of particular significance that appellant was personally at fault and that she demonstrated a pattern of noncooperation and dilatoriness. The extent of a party's personal responsibility is one of the factors that influences whether or not it is appropriate to dismiss a complaint under the nearly identical federal Rule 37(b). *See Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868 (3rd Cir.1984).[21] A

---

**21.** This court has considered the fact that a party was at fault to be relevant to a finding of

willfulness. *See Lyons, supra,* 524 A.2d at 1201 (court noted that appellant's first attorney had

court may well be more hesitant to dismiss a complaint when a party's attorney is at fault for the noncompliance with a court order than when the party is personally responsible.

Moreover, it is the plaintiff that is being sanctioned here. Appellant, as plaintiff, chose to utilize the court system to try to redress wrongs that had allegedly been done to her. When invoking such aid, a plaintiff[22] should be prepared and willing to follow the rules that keep that system running in an orderly and efficient manner. Noncompliance with court orders and rules may cause the system to bog down and may adversely affect other litigants. When a plaintiff is personally responsible for this type of delay, he or she prejudices not only the defendant but also the ability of other persons—persons that are doing what is necessary to follow the rules—to utilize the system.[23]

■ The trial court could likewise find appellant's failure to comply with discovery requests to be willful from an examination of the events prior to dismissal. Early in the case, appellant had not answered appellee's interrogatories, nor had she produced the documents requested in the time provided by the rules of civil procedure. At a scheduling conference, appellant was ordered by the court to comply with those discovery requests. She apparently did so, but not within the two weeks that the court had given appellant. Later, when appellee filed her Motion for Sanctions, appellant asked for an extension of time to respond to the motion; nevertheless, without explaining even to this date the reasons

therefor, appellant failed to file a response by the self-imposed deadline she had requested. Appellant had not complied with her discovery obligations in significant respects, and had further clearly violated the scheduling order by not producing the names of several dentists until some weeks past the date by which discovery was to be completed. The trial court had telling evidence of appellant's unwillingness to cooperate with her first attorney in complying with discovery orders and requests, and there was no indication that her cooperation would improve with a second attorney—especially given the fact that the second attorney had, without explanation, failed to file a timely opposition to the Motion for Sanctions. The record before the trial court reflected a plaintiff who had personally displayed apparent gross indifference to the rules of the court and to fair treatment of the defendant.

■ Likewise, the trial court appropriately found that appellee had been prejudiced by appellant's noncompliance with discovery obligations and orders. In the Motion for Sanctions, appellee asserted that appellant had not provided relevant and material medical records even after repeated requests by appellee and by appellant's own attorney. Additionally, appellant identified some of the dentists and doctors whom she had consulted in the past only after discovery was closed. Appellee alleged that the "medical and dental records are absolutely critical to the issues of the instant case and in particular to the Plaintiff's claims that she suffers from T.M.J. Syndrome as a result of the incident

successfully moved to withdraw due to client noncooperation when finding willfulness in upholding a default judgment).

**22.** We do not imply that a defendant is not obliged to follow the rules of the legal system. However, a defendant is brought into court against his will whereas a plaintiff chooses to bring a lawsuit.

**23.** In this case, a detailed scheduling order had been issued to give warnings of exactly when pretrial matters—including discovery—were to be completed. Such orders "place civil cases on [a] much more rigorous and formal track, in an effort to alleviate some of the languor which often plagues the civil calendar." *Solomon v.*

*Fairfax Village Condominium IV Unit Owner's Ass'n,* 621 A.2d 378, 379–80 (D.C.1993). In *Solomon,* this court described Rule 16 as "a carefully crafted, detailed road map which parties must be expected to follow strictly, if the important underlying objectives are to be achieved" when finding that "[o]ur standards governing review of a dismissal under [Rule 16] ... must reflect that imperative." *Id.* at 380. The same is true of Rule 26(g) discovery requirements. Although there is a societal preference for a decision on the merits of a case, there is a competing concern for minimizing the costs and delays involved in our civil litigation system.

of May, 1987." Appellee asserted that because of the discovery deadline, she had no chance to timely depose the newly identified doctors and dentists nor to obtain their records. This lack of information put appellee in a position where she could not properly and adequately prepare for trial or for the upcoming pretrial conference as scheduled.[24]

These allegations gave the trial court a sufficient basis to find that appellee had been prejudiced. A party's failure to respond to discovery that impairs another's ability to prepare for trial has been found highly relevant to the prejudice requirement. *See Lyons, supra,* 524 A.2d at 1202 (where evidence was important to appellees' claims and was needed for trial, and where appellees were forced to resort continually to court process for compliance with discovery requests, prejudice test satisfied); *Firestone v. Harris,* 414 A.2d 526, 527 (D.C.1980) (where one month before trial appellant had not provided proper answers to interrogatories, "[a]ppellee's preparation for trial was obviously frustrated" and default judgment was proper). Appellant's argument that appellee was not prejudiced because the delay was not as long as in other cases where dismissals had been reversed (citing *Braxton, supra,* where a year long delay caused no prejudice, and *Hackney, supra,* where three delays of several months caused no prejudice, among others) is not persuasive. In those and other delay cases, there was no scheduling order which dictated the timing for pretrial activities. The primary purpose of a pretrial schedule is to keep litigation moving forward and to warn the parties about deadlines they are expected to meet. Failure to meet the deadlines undermines the goals of the schedule and prejudices the other side, which is also subject to the deadlines. The *Hackney* court stated in support of its finding of no prejudice that no trial date or pretrial date had been set. *Hackney, supra,* 503 A.2d at 1253. Here, the pretrial conference was scheduled for the end of May, 1991 at the latest. The court in *Vernell, supra,* 495 A.2d at 313, stated in support of its ruling that dismissal of a claim was unwarranted, that the dismissal occurred when more than a month was left for discovery. Here, in contrast, discovery had been closed for over two months. The scheduling order was likewise in contrast to the *Ungar Motors* case, where a two month delay was not prejudicial given the "leisurely pace with which [the] case was moving through the court system." *Ungar Motors, supra,* 463 A.2d at 689.

We likewise conclude, on the facts of this case, that the trial judge sufficiently indicated that lesser sanctions had been considered and rejected. In the Motion for Sanctions, appellee proffered various options to the trial court other than dismissal. The draft order attached to the motion, which the trial court used in its ruling, provided as an alternative to dismissal that plaintiff be "prohibited from introducing any expert testimony at trial concerning the physical and mental condition of the Plaintiff and any alleged nexus to the incident of May, 1987, and the Plaintiff is further prohibited from introducing any medical or dental records at trial regarding the physical or mental condition of the Plaintiff." The trial court drew a line through all of these suggestions, which could have been adopted in whole or in part, thereby indicating that they had been considered and rejected.[25]

It is true that here the dismissal was effectively with prejudice, because appellant had filed her claim just before the statute of limitations expired. However, appellant put herself in that position by waiting until the last possible minute to file. Knowing that refiling would not be possible, appellant was obligated to be especially assiduous in abiding by the discovery rules so as to avoid putting her claim in jeopardy.

**B.**

We likewise find no abuse of discretion in the denial of the Motion for Reconsidera-

---

24. The pretrial conference was scheduled for sixty days after mediation occurred. Mediation was scheduled for sometime between February 22, 1991, and March 22, 1991.

25. It is worth noting that by failing to file an opposition, appellant presented no other possible options for the trial court to consider.

tion. The considerations supporting the initial dismissal are equally applicable to the Motion for Reconsideration.[26] Appellant did assert in the motion that some of the discovery requested had been tendered, and she attempted to explain her failure to produce some of the other documents by citing the age of the documents and her own memory failure. However, appellant did not give the trial court any justification for her failure to file grounds of opposition to the Motion for Sanctions. More tellingly, she did not provide the requested discovery material along with the Motion for Reconsideration or give any timetable for its production, and in fact told the trial court that some of the requested discovery material was in her possession but had not been given to appellee. Thus, not only did appellant in her motion fail to immediately rectify the discovery failures, but on the contrary gave indications that her past pattern of noncompliance could well continue. Her assertions that she had been diligent in providing the discovery were undermined by the record to the contrary.[27] Lastly, even on appeal, appellant did not provide other sanction options that the trial judge could impose in place of dismissal—she referred only to "other available alternatives which would have addressed defendant's concerns." In sum, the trial court did not abuse its broad discretion in denying the Motion for Reconsideration.

Accordingly, the order of the trial court dismissing appellant's complaint is

**Affirmed.**

---

**26.** In the Motion for Reconsideration, appellant asserted that she was not warned that her noncompliance with court orders concerning discovery could potentially lead to the dismissal of her case. This claim is not supported by the record. Appellant was warned about potential dismissal in the two-week order at the scheduling conference and in the scheduling order itself. Additionally, appellant was given ample warning of the potential for dismissal by appellee's Motion for Sanctions which asked for dismissal as the preferred remedy for appellant's noncompliance.

Appellant also argues that the trial court should have conducted a hearing on the motion. However, appellant did not request a hearing pursuant to Super.Ct.Civ.R. 12–I(f) and the trial court was not required to hold a hearing on its own initiative.

**27.** The fact that appellant had provided some of the discovery requested by appellee did not cure the problem that other specified documents were not produced. *See Lyons, supra,* 524 A.2d at 1201.