Diane MIZRAHI, Appellant,

v.

Katherine SCHWARZMANN, Appellee.

Nos. 96–CV–1316, 96–CV–1317.

District of Columbia Court of Appeals.

Argued Feb. 10, 1999.

Decided Nov. 24, 1999.

---

Lewis J. Saul, Washington, DC, with whom Paul G. Levy, Trenton, NJ, was on the brief, for appellant.

Sharon M. Chambers, Fairfax, VA, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and SCHWELB, Associate Judges.

STEADMAN, Associate Judge:

This civil suit stemmed from an automobile accident on February 3, 1992 in which plaintiff-appellant Diane Mizrahi's vehicle was struck from behind by the car of defendant-appellee Katherine Schwarzmann. While liability was contested, the primary issue at trial was the extent of plaintiff's injuries that could be attributed to the accident. Plaintiff claimed that she suffered post-concussion syndrome, mild closed head injury with organic brain damage, soft tissue injury, chronic neck and shoulder pain, post-traumatic stress disorder, and depression as a result of the collision. She offered evidence at trial showing that she had incurred medical expenses of close to $50,000 relating to her claimed injuries, as well as other elements of damages. The defense argued that plaintiff's injuries from the accident were exclusively orthopedic in nature and should have resolved within six weeks of onset and that other claimed physical and mental problems, if present at all, were not related to the accident. After a six day trial with testimony from at least ten experts,[1] the jury found the defendant negligent but awarded plaintiff only $8,000 in damages.

On appeal, plaintiff-appellant's challenge focuses upon the trial court's refusal to grant her time within which to depose the defendant's four experts, even though the defendant had had the opportunity to depose all of plaintiff's experts. As a result, the parties went to a trial where

1. Among those testifying for plaintiff were: Dr. Thomas, Dr. Podd, Dr. Benrad, Dr. Joseph, Dr. Ellis, and Dr. Smothers, who were her treating medical personnel. The following testified on behalf of defendant: Dr. Gordon, Dr. Mendelsohn, Dr. Henderson, and Ms. Sampeck.

defendant had deposed all of plaintiff's experts but plaintiff had deposed none of defendant's experts. This, plaintiff claims, was a grossly uneven playing field, with a resultant limited damage award. We think there is merit in this argument of unequal treatment in the circumstances here. Therefore, we vacate the judgment and remand for a new trial.[2]

## I.

Plaintiff filed her action on March 1, 1994 against both appellee and General Motors, which remained a party to the case until it prevailed on its motion for summary judgment in February of 1996. The motions judge, pursuant to Super. Ct. Civ. R. 16(b),[3] issued an initial scheduling order on September 23, 1994 setting the close of discovery for March 23, 1995. Because of unexpected delays arising from plaintiff's diagnosis of and subsequent surgical and radiation treatment for cancer, the entire scheduling order was revised by joint consent on multiple occasions, first extending close of discovery to June 23, 1995, then to September 22, 1995, and finally to October 23, 1995. In each case, the entire schedule was shifted forward so that all components, including deadlines for Rule 26(b)(4) filings, discovery completion, and motions filings, were extended in tandem.

■ Apart from these necessary delays, discovery was further stalled by a lengthy and vigorous dispute over the number of independent medical examinations ("IMEs") plaintiff would undergo, once she was well enough to participate. Ordinarily, independent physical and mental examinations in personal injury cases are arranged through stipulation, without resort to a court order. 8A CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2234 (1994). *See also* GLASER, PRETRIAL DISCOVERY AND THE ADVERSARY SYSTEM, p. 146 (1968); *Liechty v. Terrill Trucking Co.*, 53 F.R.D. 590, 591 (D.C.Tenn.1971). However, in this case, the battle over IMEs is documented in the record by twenty pieces of correspondence between counsel for the parties, the majority of which were written between mid-July[4] and late September. Early in the dispute, plaintiff asserted she would attend a total of two IMEs only. Defendant had initially requested four IMEs, later increased to six, and ultimately asked that at least an orthopedic exam be scheduled while remaining disagreements were being resolved. As of August 25, 1995, plaintiff's position was stated as follows:

> Under the circumstances, our offer of two IMEs is reasonable; if you will not agree to our offer, you will have to move the court to order IMEs. In addition, as we discussed yesterday, even if we were willing to allow Ms. Mizrahi to go to one IME without an agreement, she cannot go to the appointment scheduled for August 28 as she will be out of town.

No resolution had been reached as the September 11, 1995 deadline approached for defendant's submission of her Rule 26(b)(4) statement. Defendant proceeded

**2.** This moots out plaintiff's related argument of insufficiency of damages and her complaint about the reduction in her bill of costs, which can be resubmitted on retrial. We vacate the entire judgment, not just the damage award, because of the close interrelation between the accident itself and the hotly disputed causal connection to the physical and mental condition of plaintiff. To prove actionable negligence, the plaintiff must, *inter alia,* demonstrate "a reasonable causal connection between the act or omission of the defendant and the plaintiff's injury." *District of Columbia v. Frick,* 291 A.2d 83, 85 (D.C.

1972) (citing W. PROSSER, TORTS §§ 41–42 (4th ed.1971); RESTATEMENT (SECOND) OF TORTS §§ 430–32 (1965)). *See also* CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2814 (1994).

**3.** All rules referenced hereafter are District of Columbia Superior Court Rules of Civil Procedure (1998), unless otherwise noted.

**4.** In July, plaintiff listed seven medical, psychological, and vocational experts in her 26(b)(4) designation.

to submit her Rule 26(b)(4) statement, listing a number of experts with no details as to their expected testimony, but with a proviso that the statement would be supplemented by reports of the listed experts once they were able to complete their independent examinations of plaintiff.

A few days after submission of defendant's 26(b)(4) expert list, on September 15, plaintiff presented herself for an IME with defendant's designated orthopedist, Dr. Gordon, but the examination did not go forward because Dr. Gordon insisted on evaluating plaintiff alone, while plaintiff insisted on the presence of her mother. That same day, plaintiff was seen by Dr. Mendelsohn, neurology expert for General Motors, then still a defendant in the case.[5] On September 20, an in person meeting between counsel for defendant Schwarzmann and counsel for plaintiff was held in a final attempt to resolve the discovery dispute pursuant to Rule 26(i),[6] but the parties remained unable to reach agreement. On September 22, defendant moved to compel plaintiff's submission to independent medical examinations under Rule 35.[7] Defendant requested examinations by the following experts: Dr. Gordon (orthopedics), Dr. Mendelsohn (neurosurgery), Dr. Schretlen (neuropsychology), Dr.

Henderson (neurology/psychiatry), and Ms. Sampeck (vocational expert). As further required by Rule 26(i), defendant attached evidence of the parties' attempts to resolve the matter without court intervention. The motion also requested an extension of time for completion of the examinations, and imposition of sanctions against plaintiff in the form of expenses and attorney's fees for the motion, citing Rule 37(a)(4).[8] Plaintiff argued in her reply that no good cause had been shown for any of the exams.

On November 7, 1995, two weeks after discovery had closed, the motions judge issued an order granting the motion in part and denying it in part. The order required plaintiff to undergo examination by Dr. Gordon, and one other expert of defendant's choice (either Schretlen, Henderson, or Sampeck). Defendant elected to use the additional granted IME for a psychiatric examination by Dr. Henderson.[9] Because plaintiff already had been examined by Dr. Mendelsohn on September 15, 1995 and was ordered to return to Dr. Gordon, three of the five defense experts identified in the Rule 35 motion ultimately were permitted to examine plaintiff. The deadline for IMEs by Doctors Gordon and Henderson was extended

5. Dr. Mendelsohn was also listed as an expert on defendant Schwarzmann's 26(b)(4) statement. A letter dated September 20 from plaintiff's counsel to defense counsel confirms that the IME with Dr. Gordon did not go forward as scheduled, but that the examination by Dr. Mendelsohn was completed. That letter also requested available dates for the deposition of Dr. Mendelsohn.

6. Rule 26(i) provides in part that "before filing any motion relating to discovery ... the affected parties or counsel must meet for a reasonable period of time in an effort to resolve the disputed matter."

7. Rule 35 provides:

When the mental or physical condition (including the blood group) of a party ... is in controversy, the Court may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner ... The order may be made only on

motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or person by whom it is to be made.

8. Rule 37 provides for sanctions "[i]f a party ... fails to obey an order to provide or permit discovery." Super. Ct. Civ. R. 37(b)(2). Because plaintiff was not in violation of any court order, defendant's claim for sanctions was not justified under this Rule. While Super. Ct. Civ. R. 37(d) authorizes sanctions in certain circumstances for failure to comply with discovery requests even in the absence of a court order, that rule does not apply to the particular discovery violations at issue in this case.

9. Plaintiff had already taken a deposition of defendant's other potential psychological expert, Dr. Schretlen, although he had not personally examined plaintiff.

to December 15, 1995, and the order explicitly stated that all other discovery closed on schedule.[10] The motion for sanctions was denied. Neither order was accompanied by any discussion of the reasoning behind the rulings.

On November 16, 1995, plaintiff moved for clarification of the court's earlier order to determine whether she would be permitted to depose those experts who were to examine her and submit their reports after the deadline for completion of discovery.[11] She stated that scheduling depositions would cause no further delays, and that she would be prepared for the mediation session scheduled for January 31, 1996. The motions judge took up the issue during a hearing set for November 17, 1995. Defendant objected to extension of time for taking of depositions, declaring that plaintiff had been the primary cause of delay and should not benefit from further extensions. The court then orally ruled that no depositions outside the discovery period would be allowed, but that the defense experts would be limited in their testimony to those opinions set forth in reports to be submitted to plaintiff. The court made no findings of fault or violations of good faith discovery practices by either party. After the case was transferred to the trial judge, in December of 1995, plaintiff moved for reconsideration of the motions judge's ruling. The trial judge upheld the prior ruling.[12]

## II.

■ In the case at bar, we are essentially faced with a denial of a request by plaintiff for enlargement of discovery. A party may apply for an order enlarging time for discovery upon a showing of good cause. Rule 26(e). Although "[a]n order may be altered or amended whenever justice so requires," Rule 26(g), the Rules generally favor strict adherence to time frames established at the beginning of the litigation process. Rule 16(b)(6) states that "the scheduling order may not be modified except by leave of court upon a showing of good cause." We have noted that the motions judge has wide discretion when resolving discovery disputes. *White v. Washington Metro. Area Transit Auth.*, 432 A.2d 726, 728–29 (D.C.1981). In determining whether the trial court has abused that discretion by denying additional discovery, "[t]his court evaluates all pretrial proceedings prior to the sanction when reviewing the lower court's actions." *Perry v. Sera*, 623 A.2d 1210, 1218 (D.C.1993) (citing *Hackney v. Sheeskin*, 503 A.2d 1249, 1252 (D.C.1986)).

Although not strictly applicable in the circumstances here, where no fault has been expressly attributed to any party, it is instructive to examine factors relating to the imposition of discovery sanctions. In *Dada v. Children's Nat'l Med. Ctr.*, 715 A.2d 904 (D.C.1998), we identified a list of five non-exhaustive considerations when a sanction of limited discovery is involved in a ruling:

(1) whether allowing the evidence would incurably surprise or prejudice the opposite party;

(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;

---

10. Apparently, there had been one other Partial Consent Motion to Amend Scheduling Order, which the motions judge denied that same day in a separate order, stating that dispositive motions would remain due on November 9, 1995.

11. Defendant had deposed plaintiff's experts in September of 1995.

12. The trial judge noted: "It also appears that the Court had to compel plaintiff to submit to physical examination by a doctor designated by defendant Schwarzmann, since plaintiff failed to submit to such examination without a court order, and that plaintiff's failure delayed discovery in this case." We read this simply as a statement of fact, not a clear finding of fault. Furthermore, the statement was made in connection with a motion for reconsideration and where the relevant rulings had been made by another judge.

(3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully;

(4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and

(5) the impact of excluding the proposed testimony on the completeness of information before the court or jury.

*Dada, supra,* 715 A.2d at 909. *See also Abell v. Wang,* 697 A.2d 796, 801 (D.C. 1997); *Tisdale v. Howard Univ.,* 697 A.2d 53, 54 n. 1 (D.C.1997). The first two factors revolve around questions of prejudice, the third factor goes to responsibility for delays, and the last two factors balance efficiency of the court system with our preference for decisions based on a complete record of evidence.

It is hardly necessary to expound here on the present understanding in modern litigation of depositions as a critical tool in preparing for the examination of witnesses. As the Advisory Committee Notes to the 1970 edition of the Federal Rules of Civil Procedure state,

a prohibition against discovery of information held by expert witnesses produces in acute form the very evils that discovery has been created to prevent. Effective cross-examination of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently can not anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand ... Similarly, effective rebuttal requires advance knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, then the narrowing of issues and elimination of surprise which discovery normally produces are frustrated.

Indeed, the importance of depositions as a part of such discovery in the context of expert witnesses was expressly recognized by the 1993 amendments to the Federal Rules of Civil Procedure to permit such depositions as a matter of right. "[E]xperts who are expected to be witnesses will be subject to deposition prior to trial, conforming the norm stated in the rule to the actual practice followed in most courts, in which depositions of experts have become standard... the deposition of an expert required by subdivision (a)(2)(B) to provide a written report may be taken only after the report has been served." Notes of Advisory Committee on 1993 amendments to Rules.

It is true that no corresponding change has been made in the Superior Court Rules, which continue technically to leave depositions of experts to the discretion of the trial court. Rule 26(b)(4)(A).[13] While conceivably there might be circumstances under which the trial court could limit pretrial discovery of experts to the reports alone, a point which we need not decide here, the problem in this case is that this limitation was applied only to the defendant's experts.

■ In this case, both parties at trial presented orthopedic, neurology, and psychiatric experts who testified at length with conflicting opinions as to the existence and extent of plaintiff's injuries. Defendant had the opportunity to depose plaintiff's experts in September. Plaintiff, on the other hand, was given summary reports by defense experts prior to trial and defendant was instructed to ensure that expert testimony did not fall outside

---

13. That rule provides:

"(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the Court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this Rule, concerning fees and expenses as the Court may deem appropriate."

the four corners of the reports. In weighing prejudice to each party, the most striking factor is the imbalance presented here, where, in a case that turned on expert testimony, defendant had the opportunity to depose all of plaintiff's experts while plaintiff was unable to depose effectively any of defendant's experts.[14]

When a party asking for extension of discovery is primarily responsible for delays, it is of course less likely to prevail on its request than if the opposing party has been the obstructing force in efficient operation of the legal system. *Dada, supra,* 715 A.2d at 910. In this litigation, both parties were bound by the requirement that "all counsel and all parties must take the necessary steps to complete discovery and prepare for trial within the time limits established by the scheduling order," Rule 16(b)(6), as well as the condition that "each party and each party's attorney are under a duty to participate in good faith in the framing of a discovery plan if a plan is proposed by the attorney for any party." Rule 26(g). Defendant made several proposals for completion of discovery which are revealed in the record. However, plaintiff made clear at the outset that she wished to limit the IMEs to what she considered a reasonable number. She was within her right to take this position in the absence of a court order. Plaintiff also asserts that the need for an extension of discovery stemmed from the fact that defendant waited too long in filing her Rule 35 motion to compel IMEs. Rule 26(i) requires that "before filing any motion relating to discovery ... the affected parties or counsel must meet for a reasonable period of time in an effort to resolve the disputed matter." Defendant filed her motion before the deadline, but only after protracted discussions out of court. Although defendant's 26(b)(4) statement was also timely filed, it lacked the required details regarding the expected testimony of its witnesses because no IMEs had been conducted at that point. The timing of the Rule 35 motion thus negatively impacted the ability of discovery to move forward within the scheduled period.

We note the absence of any clear attribution of blame on the plaintiff for the state of affairs with respect to the delayed independent medical examinations and hence the opportunity for timely depositions.[15] It is true, as already noted, that ordinarily such IMEs are mutually arranged. This case, however, involves the special circumstances of plaintiff's illness. The disagreement as to the number of IMEs does not appear to involve any clear unreasonable intransigence on plaintiff's part and indeed the motions judge in ruling essentially split the difference between the parties' respective positions as to the number of IMEs to be allowed.

Furthermore, the rules themselves recognize the special potentially intrusive nature of such examinations. Rule 35 provides for such examinations on order of the court and gives the court wide powers over prescribing the conditions relating to such examinations: "The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, examiner, conditions, and scope of the examination and the person or persons by whom it is to be made."[16]

---

14. Plaintiff had taken the deposition of Ms. Sampeck, who was not a medical witness but rather a vocational expert for the evaluation of plaintiff's earning power in light of her claimed disabilities from the accident, but that was before Ms. Sampeck had had an opportunity to examine all the documentary submissions that she used in preparing her subsequent report. Plaintiff had no opportunity to depose her after the report was rendered. As already indicated, see note 9, *supra,* plaintiff had deposed Dr. Schretlen but he was not called as a witness. Dr. Mendelsohn had examined plaintiff on behalf of General Motors but had moved to Florida and was unavailable for timely deposition.

15. See note 12, *supra.*

16. Indeed, several Supreme Court cases have dealt with constitutional challenges to the allowance of such examinations in civil litigation and recognized their special nature. *Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct.

Further, the rules provide for orders of contempt of court for "the failure to obey any orders *except an order to submit to a physical or mental examination . . .*" Rule 37(b)(2)(D) (emphasis added).[17]

While obviously a plaintiff claiming physical and mental injuries as a result of defendant's negligence must necessarily expect to be submitted to appropriate examinations, and it is not difficult to imagine scenarios in which a trial court might well find fault in a unreasonable position taken by a plaintiff in such circumstances, we cannot say that that is the case here, especially in the absence of any clear such finding by the trial court.

Finally, we note the posture of plaintiff's request in the context of the specific state of the trial court proceedings at the time of the request and the institutional preference for fully informed decisions based on the merits. *Solomon v. Fairfax Village Condominium IV Unit Owners' Ass'n,* 621 A.2d 378, 379–80 (D.C.1993). In *Dada, supra,* we found that permission to supplement discovery should have been granted because time easily permitted both the supplementation and depositions by the opposing party before mediation was scheduled to begin, 715 A.2d at 909. On the other end of the spectrum, *Perry, supra,* upheld a dismissal—the harshest of sanctions—in part because although the pretrial conference might have been as much as seven weeks away, discovery had been closed for over two months. 623 A.2d at 1220. In the case at bar, discovery had been extended over a period of seven months, but by mutual consent and for understandable reasons. Defendant had been granted an extension for conducting IMEs just one week before plaintiff's request for enlargement. Scheduled mediation remained more than one month away, with actual trial considerably further in the future.

In light of the considerations outlined above, we must conclude that the trial court abused its discretion in denying an enlargement of time for plaintiff to take depositions of any of defendant's experts when defendant had had the opportunity to depose all of plaintiff's experts. Accordingly, we vacate the judgment and remand for further proceedings consistent with this opinion.

*So ordered.*

---

422, 85 L.Ed. 479 (1941); *Union Pacific Railway Co. v. Botsford,* 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891). *See* 8A CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2231 at 465–67 (1994).

17. A court order under Rule 35 is instead enforced under subparagraphs (A), (B), or (C) of Rule 37(b)(2), which allow the following orders as sanctions:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.