**John WEINER, Individually and as Personal Representative of the Estate of Denise Weiner, Appellant,**

v.

**Martin S. KNELLER, et al., Appellees.**

**No. 86–1322.**

District of Columbia Court of Appeals.

Argued Nov. 9, 1988.
Decided April 20, 1989.

---

Robert X. Perry, Jr., Washington, D.C., for appellant.

Kevin M. Murphy, with whom L. Palmer Foret, Washington, D.C., was on the brief, for appellees.

Before ROGERS, Chief Judge, MACK, Associate Judge, and PRYOR, Senior Judge.

MACK, Associate Judge:

On November 8, 1985 Denise Weiner died of a progressive malignant lesion of the chest called a diffuse histiocytic lymphona. Before her death, Mrs. Weiner sought diagnosis and treatment by defendant-appellees, physicians at the Yater Clinic. The physicians misread initial x-rays and misdiagnosed the illness. On January 9, 1986, decedent's widower, John Weiner, amended a prior action [1] alleging medical malpractice to seek damages for a wrongful death claim on behalf of himself and his minor daughter, a survival action for the benefit of the decedent's estate, and a claim for loss of consortium. Since the parties disputed whether Mrs. Weiner's disease would have been curable, the trial turned on causation, and both sides produced expert testimony on that issue. Discussing the statistical likelihood of survival given the decedent's condition when first diagnosed, Weiner's principal expert, Dr. Richard I. Fisher, linked the deterioration in her condition and ultimate death to appellees' failure to make timely diagnosis and administer appropriate treatment. Appellees produced an expert, Dr. Robert C. Young, who, relying largely on the decedent's incomplete response to subsequent chemotherapy, testified that because her condition was incurable from the beginning, the delay attributable to misdiagnosis had no significance.

At a conference nine days before trial, appellants advised appellees that Dr. Fisher would offer testimony to "refute" Dr. Young's testimony. Appellees voiced no objection at the time to this proffer, although appellants had filed no supplementary statement pursuant to Super.Ct.Civ.R. 26(b)(4), which requires parties to identify their experts and the expected content of their testimony, and Super.Ct.Civ.R. 26(f)(1)(B), which requires supplementation of this statement if additional testimony becomes known. At trial, Dr. Fisher testified fully as to the chances of survival by reason of early detection. However, when

1. The prior action was brought on behalf of husband and wife before the death of the wife.

he sought to offer his opinion as to the non-significance of the tumor's response to treatment, appellees objected, claiming surprise and prejudice. The court excluded Dr. Fisher's testimony. In closing argument, appellees' counsel implied that appellants could find no expert to refute Dr. Young's testimony as to tumor response and the inevitability of death. The jury found for appellees. A new trial was denied.

In this court, appellants argue that Dr. Fisher's testimony was wrongly excluded, and that opposing counsel's closing argument was misleading and improper. Appellees contest these points; they also argue that the scope of the exclusion was less than appellants suggest and would have allowed the testimony appellants claim was excluded, and that, in any event, their cross-examination of appellants' expert on related issues opened the door to redirect on the excluded testimony. Because we find merit in appellants' argument that Dr. Fisher's testimony was wrongly excluded and find no merit in appellees' defenses, we reverse and remand.[2]

I

■ We begin by examining the applicable law as it has developed in this and other jurisdictions. Superior Court Civil Rule 26(f)(1)(B) imposes a duty on parties seasonably to supplement pretrial statements relating to expert witnesses. Under Super.Ct.Civ.R. 37, the trial court may enforce the duty of supplementation, like other discovery rules, through such sanctions as default judgment, dismissal, exclusion of evidence, continuance, or any other action it deems appropriate. The trial court has broad discretion to apply discovery sanctions, *Lyons v. Jordan*, 524 A.2d 1199, 1201 (D.C.1987), including the discretion not to apply sanctions at all. *Corley v. BP Oil Corp.*, 402 A.2d 1258, 1261 (D.C.1979). Consequently, the judgment of the trial court will only be disturbed if this discretion has been abused, and abuse may only be found where the trial judge has imposed "a penalty too strict or unnecessary under the circumstances." *Henneke v. Sommer*, 431 A.2d 6, 8 (D.C.1981) (citation omitted).

■ The primary purpose of Rule 26(f)(1)(B) and the accompanying sanctions is to prevent unfair surprise and limit the issues to those articulated before trial, so that an efficient and orderly presentation of evidence may be insured. *Corley, supra*, 402 A.2d at 1262; *see also Laaperi v. Sears, Roebuck & Co.*, 787 F.2d 726, 733 (1st Cir.1986) (construing FED.R.CIV.P. 26(e)(1)(B)) (purpose is "narrowing of issues and elimination of surprise").[3] This court has often discussed the standards for deciding whether the penalties of default judgment or dismissal are "too strict or unnecessary under the circumstances," *see infra* note 4 and accompanying text, but it has not developed precise standards for the sanction of exclusion. In the event of default judgment or dismissal, we have held that "a trial court abuses its discretion if it fails to consider lesser sanctions before dismissing an action under Rule 37, or if there is no showing of 'severe circumstances' which would justify dismissal." *Braxton v. Howard University*, 472 A.2d 1363, 1365 (D.C.1984) (citation omitted), *cited in Taylor v. Carreno*, 528 A.2d 1241, 1242 (D.C.1987).[4] Until now, however, we have not articulated whether these standards ap-

---

**2.** We do not reach the propriety of appellees' closing argument since we reverse on other grounds.

**3.** Federal Rules of Civil Procedure 26(e)(1)(B) is identical to Super.Ct.Civ.R. 26(f)(1)(B) and federal cases interpreting it are therefore relevant to our interpretation of the latter rule, though not controlling.

**4.** In deciding whether severe circumstances exist, we consider whether the omission has re-

sulted in prejudice to the opposing party, and whether it was willful. *Taylor, supra*, 528 A.2d at 1242; *Hinkle v. Sam Blanken & Co.*, 507 A.2d 1046, 1049 (D.C.1986); *see also Lyons v. Jordan, supra*, 524 A.2d at 1201–02 (default judgment); *Vernell v. Gould*, 495 A.2d 306, 311 (D.C.1985) (dismissal); *Firestone v. Harris*, 414 A.2d 526, 527 (D.C.1980) (default judgment requires only a "conscious" omission); *Himmelfarb v. Greenspoon*, 411 A.2d 979, 982 (D.C.1980) (dismissal).

ply to the sanction of exclusion.[5]

The federal appellate courts have offered more guidance with respect to the issue of trial court error in excluding testimony on Rule 26 grounds. In *Meyers v. Pennypack Woods*, 559 F.2d 894, 904 (3d Cir.1977), the court, reversing the district court's exclusion of expert testimony by a witness not named in pretrial memoranda, stated four "basic considerations" in reviewing such a sanction:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

The federal court indicated that the validity of the excuse offered by the party seeking to introduce the witness and the importance of the excluded testimony were also significant factors. *Id.* The *Meyers* standards have been reiterated in the Third Circuit and approved in other courts.[6] This framework, however, applies particularly to cases involving the exclusion of witnesses, and not necessarily to those involving the preclusion of specific testimony by a witness permitted to take the stand. *See Johnson, supra* note 6, 775 F.2d at 7 n. 7

(approving *Meyers* standards but declining to apply them).

## II

■ Where the issue is whether an expected witness should be permitted to give putatively unexpected testimony, a threshold question is whether the contested testimony was indeed distinct from the theory generally articulated by the witness. Certainly, it would be imposing too great a burden to require a party to describe, in a Rule 26(b)(4) statement, every possible direction his expert's testimony could take. Courts have generally allowed experts to state the natural concomitants of their arguments, including rebuttals of contrary expert testimony, when they have been satisfied that such testimony was of a piece with the original theory. Thus, in *Corley, supra*, 402 A.2d at 1262–63, we held that the exclusion of expert testimony not made explicit in a pretrial statement, but consistent with the expert's original theory, was improper. As the First Circuit pointed out in *Johnson, supra* note 6, 775 F.2d at 7:

> [N]othing in the rule ... forecloses an expert from revising or further clarifying opinions during redirect or surrebuttal in response to points raised by the opposing party during its cross-examination or the presentation of its case. We must therefore not read Rule 26 mechanically, but rather in light of its dual purposes, "narrowing of issues and elimination of surprise."

---

5. Exclusion of evidence is a severe sanction. *See, e.g., DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1202 (3d Cir.1978). Under Rule 37 the Superior Court may avail itself of a lesser sanction, such as a continuance, to allow the surprised party to examine the record, possibly resume discovery, and prepare some response to unexpected testimony. In *Corley, supra*, we held that the trial court abused its discretion by excluding testimony that was properly a part of the theory already established by expert testimony. Other cases involved challenges to the trial court's discretion in refusing to exclude testimony, with mixed results. *Rotan v. Egan*, 537 A.2d 563 (D.C.1988) (affirmed); *Adkins v. Morton*, 494 A.2d 652 (D.C.1985) (reversed in relevant part); *see also Henderson v.*

*District of Columbia*, 493 A.2d 982 (D.C.1985) (order deeming facts admitted contrary to undisclosed testimony affirmed in relevant part).

6. *See, e.g., Kickapoo Oil Co. v. Clark Oil & Refining Corp.*, 788 F.2d 11, 17–18 (Temp.Emer.Ct. App.1985); *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 7 n. 7 (1st Cir.1985) (dictum); *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir.1981) (noting—but not quoting—*Meyers* factors approvingly); *DeMarines, supra*, 580 F.2d at 1201–02; *Bemer Aviation, Inc. v. Hughes Helicopter, Inc.*, 621 F.Supp. 290, 302 (E.D.Pa. 1985), *aff'd without opinion*, 802 F.2d 445 (3d Cir.1986).

(Citation omitted.) [7]

### III

■ It is difficult to evaluate where one theory ends and another begins. To the extent we can formalize a general standard, we conclude that where testimony supports the larger theory presented by an expert, is not inconsistent with that theory, and does not present an alternative to it, it should be deemed part of the theory for the purposes of Rule 26(b)(4). Here, in the context of the medical debate being waged at trial, the excluded testimony was of a piece with the testimony Dr. Fisher was allowed to give, offered merely to rebut contrary statements by Dr. Young. Dr. Fisher had testified that individuals suffering with a diffuse histiocytic lymphoma, at the same stage of development as the one Mrs. Weiner had when initially examined, exhibited an eighty percent cure rate when properly treated. In rebuttal, Dr. Young testified that his examination of later slides of Mrs. Weiner's tumor indicated that the diffuse histiocytic lymphoma was incurable, particularly since it had shown only a partial response to chemotherapy. However, Dr. Fisher was prepared to testify that (1) the later slides were not a proper basis for concluding that the disease was incurable at the start, since the cell structure of diffuse histiocytic lymphoma lesions commonly changes to an incurable pattern if not properly treated; and (2) the partial response to the chemotherapy was consistent with his prognosis under the circumstances of the treatment. We are satisfied that this argument supported the theory Dr. Fisher had initially offered, was in no way inconsistent with it, and did not constitute an alternative theory. Therefore it was within the scope of the original testimony.

Even if the excluded testimony were distinct from the theory presented in Dr. Fisher's original testimony, the sanction of exclusion would have been too drastic unless the court found that a preponderance of factors weighed in its favor. The *Johnson* court required a "careful balancing" of "the conduct of the trial, the importance of the evidence to its proponent, and the ability of the defendant to formulate a response." 775 F.2d at 8 (*citing DeMarines*, *supra* note 5). The last factor relates particularly to the issue of surprise. Moreover, the opportunity of either party to cure is relevant. If exclusion does not prevent testimony from being introduced by other similarly credible witnesses, the impact of excluding testimony is mitigated by its "cure" for the purposes of our analysis. Similarly, if the party seeking exclusion had some opportunity to respond to the "surprise," the ill effects of allowing the testimony would be mitigated and affirmance would be counselled.[8]

■ The existing case law in this jurisdiction and elsewhere leads us to conclude that the following factors are relevant in deciding whether to allow expert testimony improperly left off a Rule 26(b)(4) statement, and the party seeking to introduce it must bear the burden of satisfying a preponderance of them:

(1) whether allowing the evidence would incurably surprise or prejudice the opposite party;

(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;

(3) whether the party seeking to introduce the testimony failed to comply with

---

7. *See also Stich v. United States*, 730 F.2d 115, 118 (3d Cir.), *cert. denied*, 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984) (supplementation of expert testimony with analysis from article made available only a week before trial permissible, even though not included in pretrial statement, where new research was consistent with earlier work done by same expert and based on same data); *Murphy, supra*, 639 F.2d at 234–35, (given lack of prejudice and importance of evidence involved, plaintiff's expert witness should have been allowed to rebut testimony contrary to his original theory "despite the fact that appellants breached their [supplementation] duty under Fed.R.Civ.P. 26(e)").

8. *Cf. Johnson, supra* note 6, 775 F.2d at 8 (exclusion disfavored where party seeking its benefit failed to seek continuance to prepare to meet unexpected testimony.)

the evidentiary rules inadvertently or willfully;

(4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and

(5) the impact of excluding the proposed testimony on the completeness of information before the court or jury.

The party seeking to introduce the evidence must satisfy the trial court, considering these five factors in its discretion, that the purposes of Rule 26(b)(4) as we interpret it have been satisfied.

■■■ We conclude that appellants would have met this burden. There was no surprise or prejudice. Appellees' counsel had the opportunity to depose appellants' expert on the very issue sought to be excluded as early as November 7, 1985, more than five months before trial. Appellees' counsel raised with his own principal expert the issue of post-therapy response, so he had every reason to be prepared to address the issue and to expect that it would be joined by opposing counsel and his experts. Moreover, at a pretrial conference held on April 16, 1986, nine days before trial, appellees were informed orally that appellants' expert would address that issue, and did not object or seek a continuance.

The excluded testimony was important to appellants' case, since it would have rebutted expert evidence that discredited appellants' prima facie medical argument. While three other expert witnesses were allowed to testify for appellant, generally to the same effect as Dr. Fisher, numbers alone would hardly have compensated for the exclusion of Dr. Fisher's rebuttal testimony, particularly in view of the great disparity between the education and experiences of the experts. Dr. Fisher is recognized as one of the two preeminent experts on diffuse histiocytic lymphomas, at the forefront of research and writing on the subject, and Dr. Young is the other. Both have spent many years studying diffuse histiocytic lymphomas, and both are more fully abreast of new developments in the research than other practitioners in the field. Thus, an array of lesser experts would have been less well-qualified to address Dr. Young's testimony than was Dr. Fisher. Moreover, none of the other experts presented by appellants specialized in diffuse histiocytic lymphoma research or treatment. The loss of credibility appellants sustained in presenting this part of their case was substantial, and may well have affected the outcome of the trial.

Moreover, it is apparent that to the extent appellants failed to comply with the evidentiary rules, such noncompliance was inadvertent, based on their belief that the proposed testimony was part of the theory already stated in the Rule 26(b)(4) statement. Given appellees' already thorough exposure to the evidence that Dr. Fisher would have presented, there is no reason to believe that allowing the testimony would have substantially affected the orderliness of the trial. It would, at most, have occasioned a brief continuance to allow counsel to review his deposition of Dr. Fisher. Finally, there is every reason to believe that exclusion of the evidence would have deprived the jury of information central to the outcome of the trial.

## IV

Appellees also argue that appellants misconstrue the scope of the trial judge's exclusion order, and could have offered their expert's testimony as to response, just not as to the particular slides discussed by appellees' expert. This is not borne out by the trial judge's order denying the motion for a new trial. The order describes Dr. Fisher's excluded testimony as relating to "the tumor's response to chemotherapy," not merely the interpretation of the particular slides used by Dr. Young.

Further, appellees argue that their cross-examination of Dr. Fisher reopened the door to the discussion appellants claim was precluded. An examination of the cross-examination testimony does not corroborate this. Rather, it addresses the likelihood of cure given the characteristics of the lym-

phoma at initial examination, consistent with the rest of Dr. Fisher's earlier testimony. It does add that, absent data regarding the decedent's later condition, the statistical analysis is not determinative. But this testimony is not the same as a discussion of the decedent's later condition or an explanation of why that condition was consistent with Dr. Fisher's original testimony. We have our doubts that appellees' counsel would voluntarily reopen that door after having slammed it shut by vigorous objection in the first place. Nor is it consistent for appellees to argue, on the one hand, that all that the trial court excluded was testimony regarding the results recorded on certain slides, and on the other, that later testimony regarding the decedent's subsequent condition—even without touching on the slides—reopened the door for appellants' excluded testimony.

The exclusion of appellants' expert testimony requires reversal and remand for a new trial.

*Reversed and remanded.*