**Bisi DADA, Appellant,**

v.

**CHILDREN'S NATIONAL MEDICAL CENTER, Appellee.**

No. 96–CV–1720.

District of Columbia Court of Appeals.

Argued May 13, 1998.

Decided Aug. 13, 1998.

---

John G. Harnishfeger, Washington, DC, for appellant.

Adam W. Smith, Washington, DC, for appellee.

Before WAGNER, Chief Judge, FARRELL, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

After the trial court granted summary judgment in favor of appellee Children's National Medical Center ("Children's Hospital") in this medical malpractice action, appellant Bisi Dada moved for reconsideration under Super.Ct.Civ.R. 60(b)(2) on the basis of "newly discovered fact[s]." On appeal, Ms. Dada asserts that the trial court abused its discretion in denying reconsideration of its order granting summary judgment. We decline to reverse, but vacate the order denying reconsideration and remand to the trial court so that it may consider and rule upon plaintiff-appellant's motion to reopen discovery in order to file, out of time, the statement of a crucial witness under Super.Ct.Civ.R. 26(b)(4), a motion pending before the court at the time it granted summary judgment, the failure to rule on which was one of the grounds for Ms. Dada's motion to reconsider.

## I.

Appellant Bisi Dada, as parent and next friend of Magnus Dada, a minor, filed this action in Superior Court alleging that the defendant-appellee Children's Hospital negligently administered and monitored an intravenous solution being supplied Magnus Dada, thus causing injury to the child. The court entered a scheduling order directing the parties to adhere to certain deadlines in completing the various phases of discovery and trial preparation. The order stated that the schedule could "not be modified except by leave of Court upon a showing of good cause."

On June 26, 1996, over a month after the deadline set in the scheduling order and after appellee hospital had filed its Rule 26(b)(4) statement, appellant filed a Rule 26(b)(4) statement naming a specialist in obstetrics and gynecology, a family physician, and a plastic surgeon as expert witnesses. According to the statement, each of the witnesses would testify "based on his education, experience, training, and his personal examination of the minor plaintiff."

The statement set forth nothing regarding the experts' expected testimony on the applicable standard of care or whether Children's Hospital had deviated from the standard. Counsel for appellee hospital promptly advised appellant's counsel that her Rule 26(b)(4) statement did not set forth the information to which appellee was entitled and also asked that appellant immediately supple-

ment its answer to a related interrogatory. Counsel for the hospital also endeavored to secure dates for the depositions of appellant's experts. When it proved impossible to schedule the depositions of the experts, appellee's counsel obtained permission from appellant's counsel to speak directly to them.

After counsel for the hospital spoke with appellant's designated experts, appellee filed a motion for summary judgment. In it, appellee contended that appellant had failed to establish a *prima facie* case of medical malpractice because she had designated no expert witness who would testify as to the applicable standard of care or whether appellee had departed from it. In support of this contention, appellee attached affidavits in which appellant's named experts stated that they would not testify as to the standard of care or the hospital's deviation from it.

Appellant filed an opposition to appellee's motion for summary judgment and on the same day filed a "motion for leave to extend time for discovery" (actually, to reopen discovery for thirty days) so that appellant could supplement her Rule 26(b)(4) statement "to include an expert who will testify at trial on [appellant's] own theory [of] negligence and rebut the defendant's expert testimony. It will also enable the plaintiff to depose the defense expert witness and/or obtain essential documents from the deposed witness." In her motion to "extend time for discovery," appellant's trial counsel claimed that she was "astounded" by the affidavits that her experts furnished appellee.

In her opposition to appellee's motion for summary judgment, appellant contended that expert testimony was not necessary to establish the standard of care and that, in any event, she should be able to prove her claim through the hospital's experts without introducing independent medical testimony. In this opposition, appellant made no reference to her contemporaneous motion to "extend time for discovery."

The trial court granted the hospital's motion for summary judgment, noting that "plaintiff admittedly has not identified any expert who will testify as to the standard of care or defendant's violation of the standard

of care. The time to designate such a witness has long expired."

Appellant filed a motion to reconsider the entry of summary judgment pursuant to Super.Ct.Civ.R. 60(b)(2). In that motion, appellant's counsel maintained that she was "shock[ed]" by the affidavits in which her experts stated they would not testify as to the applicable standard of care and that those affidavits constituted "newly discovered fact[s]" that warranted vacating the order granting summary judgment. She stated that she had located an expert who would testify that appellee had been negligent and that the negligence caused injury to her son. Six days later, she filed an affidavit of a registered nurse who stated that appellee had breached the applicable standard of care, along with a supplemental expert witness list naming the nurse as an expert. Appellee filed an opposition to the motion for reconsideration. The court scheduled a hearing on the motion, but appellant's counsel failed to appear. The court denied the motion. Appellant followed with this appeal from the denial of her motion to reconsider.

## II.

Appearing through different counsel on appeal, appellant abandons her trial court assertion that she was entitled to reconsideration in light of newly discovered evidence; instead, she makes the argument that the trial court "abused [its] discretion in failing to consider appellant's motion to extend discovery thereby denying appellant[ ] an opportunity to amend [her] Rule 26(b)(4) statement to identify a witness who would testify in support of a *prima facie* case against appellee and consequently render summary judgment inappropriate."

We must first examine whether the theory appellant now urges was sufficiently preserved for appeal. If it was, and if we also conclude that the trial court erred in not ruling on appellant's discovery motion, we must then determine whether the proper course is to return the case to the trial court for an express ruling on the motion.

On these issues, we conclude first that the issue of whether the trial court

erred in failing to rule upon the motion to reopen discovery was sufficiently preserved. Although appellant inexplicably failed to refer to that motion in her opposition to the hospital's motion for summary judgment, the motion to "extend time for discovery" was filed and docketed in the Superior Court on the same day as that opposition.[1] The relationship between the basis upon which the trial court granted summary judgment—plaintiff's failure to identify an expert who would testify as to standard of care and the hospital's failure to meet that standard—and the appellant's request for time to file a remedial Rule 26(b)(4) statement was apparent.

■ Moreover, appellant's motion for reconsideration, although curiously misgrounded on a Super.Ct.Civ.R. 60(b)(2) claim of newly discovered evidence,[2] did in fact bring explicitly to the motions judge's attention the relevance of the motion for extension of time to file a supplementary Rule 26(b)(4) statement.[3] Appellant attached a copy of that motion to her motion for reconsideration. By that time, appellant had located an expert witness who would testify regarding the hospital's breach of the standard of care, and that witness's statement was also submitted in support of the motion for reconsideration. While the orderly functioning of the trial court was ill-served by the fact that appellant's counsel failed to appear for the hearing on the motion for reconsideration and thus lost that opportunity to argue to the court the necessity for a ruling on the motion to "extend time for discovery," we are satisfied that that matter was brought sufficiently to the trial court's attention to preserve the point appellant wishes now to pursue on appeal.

### III.

■ We have already observed that the relationship between appellant's pending discovery motion and appellee's motion for summary judgment was apparent. Because the ruling on the discovery motion in all likelihood would have determined the outcome of the motion for summary judgment, the trial court erred by failing to rule on the former before granting summary judgment. Thus, we must now consider whether the circumstances require us to remand the case to the trial court so that it may remedy the error by exercising its discretion with respect to whether to grant appellant's discovery motion.

■ We begin consideration by noting parenthetically that we would not remand for that purpose if appellant had shown that the trial court had erred as a matter of law in granting summary judgment on the basis of the record, including particularly the appellant's Rule 26(b)(4) statement, then before the court. In that case we would undoubtedly reverse.[4] But appellant demonstrated no

1. While we cannot assume that there was an administrative oversight that resulted in the judge's not being made aware of the existence of the contemporaneous motion to extend time, we recognize that such may have been the case. Indeed, the fact that the trial court's order granting summary judgment refers to the fact that the "time within which to designate such a witness [had] long expired," without even referring to the appellant's request for the reopening of discovery, suggests that possibility. The motion, however, was in fact pending before the trial court at the time the court granted summary judgment.

2. In the concluding paragraph of appellant's memorandum of points and authorities in support of her motion for reconsideration, she also cites Super.Ct.Civ.R. 60(b)(6), but fails to specify "any other reason justifying relief from the assertions of the judgment" as the language of the rule provides.

3. Appellant's trial counsel's claim that her learning from the hospital's summary judgment submission that her expert witnesses were unable to testify regarding the applicable standard of care constituted newly discovered evidence is, at best, farfetched. Relief under Super.Ct.Civ.R. 60(b)(2) can be granted only where the assertedly newly discovered evidence could not have been discovered through the exercise of due diligence. *See American Continental Ins. Co. v. Pooya*, 666 A.2d 1193, 1199 (D.C.1995) (citing *Oxendine v. Merrell Dow Pharm.*, 563 A.2d 330, 334 (D.C.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990)).

4. In order to reverse on the basis that appellant had demonstrated that the trial court's grant of summary judgment had been based on an error of law, we would normally have to consider a motion for reconsideration, filed as here within ten days of the entry of the order in question, as one brought under Super.Ct.Civ.R. 59(e). *See In*

such error. The trial court was clearly correct in ruling that the appellee was entitled to summary judgment in light of appellant's failure to establish either the applicable standard of care in this medical malpractice case or any breach of an applicable standard of care. *See Meek v. Shepard,* 484 A.2d 579, 581 (D.C.1984) ("[I]f the plaintiff fails to establish the standard of care in a medical malpractice case, the trial court must direct a verdict for the defendant."). The trial court correctly rejected appellant's position that her case could be presented to the jury without expert testimony because the facts were sufficiently obvious that the average lay person could infer negligence without such testimony. *See id.* (explaining that the standard of care in medical malpractice cases must ordinarily be proven by expert testimony). Similarly lacking in merit was appellant's alternative argument that she could reasonably have expected to establish a *prima facie* case by cross examining the hospital's witness. Nothing in the record supports that sanguine appraisal of appellant's trial prospects as they existed at that time.

Nor would we remand if the trial court's decision on the discovery motion were a foregone conclusion. It is not. And, as the trial court's exercise of discretion regarding the reopening of discovery will almost certainly determine its disposition of the motion to reconsider the grant of summary judgment, we remand for that exercise of discretion. On remand, the trial court will be called upon to decide whether, as of the time the court was considering the hospital's motion for summary judgment and the subsequent motion for reconsideration, appellant had made the required showing of good cause for modification of the court's scheduling order. The time for completing discovery, including the filing of Rule 26(b)(4)(2) statements, had ex-

pired before appellant filed her "motion to extend time for discovery." Accordingly, pursuant to Super.Ct.Civ.R. 6(b), in order to qualify for the relief she sought, it will be also incumbent upon appellant to satisfy the trial court that appellant's failure to act in timely fashion was due to excusable neglect.

Discussing the comparable federal rule, one treatise states: "Excusable neglect seems to require a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for non-compliance within the time specified in the rules." 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1165 (2d ed.1987); *see Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (under similar bankruptcy rule, inadvertence, mistake or carelessness could constitute excusable neglect); *Snow v. Capitol Terrace, Inc.* 602 A.2d 121, 125 (D.C. 1992) (describing "excusable neglect," in the context of the showing required to extend time to file appeal, as "flexibly, but strictly, interpreted") (citing *Pryor v. Pryor,* 343 A.2d 321, 322–23 (D.C.1975) (per curiam)); *see generally Bulin v. Stein,* 668 A.2d 810, 815– 17 (D.C.1995).

On previous occasions, this court has discussed the value of requiring strict adherence to scheduling orders to achieve the important underlying objectives that the Superior Court intended to achieve by adopting Super.Ct.Civ.R. 16(b).[5] *See Solomon v. Fairfax Village Condominium IV Unit Owner's Ass'n,* 621 A.2d 378, 379–80 (D.C.1993) (explaining that Super.Ct.Civ.R. 16 is a "carefully crafted, detailed road map" that "was intended ... to place civil cases on much more rigorous and formal

*re Tyree,* 493 A.2d 314, 317 (D.C.1985). Where the legally erroneous entry of summary judgment is being reconsidered, there is not the room for exercise of trial court discretion usually present in a Rule 59(e) matter. *See* 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2818 (2d ed. 1995) (Review of Rule 59(e) ruling is for abuse of discretion).

**5.** The language of Super.Ct.Civ.R. 16(b) is explicit:

All counsel and all parties *must* take the necessary steps to complete discovery and prepare for trial within the time limits established by the scheduling order. The scheduling order may not be modified except by leave of court upon a showing of good cause; stipulations between counsel shall not be effective to change any deadlines in the order without court approval.

*Id.* (emphasis added).

track, in an effort to alleviate some of the languor which often plagues the civil calendar"). For example, in upholding a trial court's dismissal of a case for a plaintiff's failure to comply with discovery orders, this court explained, "[t]he primary purpose of a pretrial schedule is to keep litigation moving forward and to warn the parties about deadlines they are expected to meet. Failure to meet the deadlines undermines the goals of the schedule and prejudices the other side, which is also subject to the deadlines." *Perry v. Sera,* 623 A.2d 1210, 1220 (D.C.1993); *see also Chapman v. Norwind,* 653 A.2d 383, 387 (D.C.1995) (same).

On the other hand, this court has repeatedly recognized the strong societal preference for a decision on the merits of the case. *See Perry, supra,* 623 A.2d at 1219, n. 23. Moreover, as appellant pointed out in her motion for enlargement of time filed on September 4, 1996, in this case there was adequate time before the mediation scheduled for November 13, 1996 and before trial to permit the filing of a supplemental Rule 26(b)(4) statement and to provide the hospital the opportunity to depose any additional witnesses named.

Appellant argues that the trial court's granting of summary judgment was essentially the imposition of the harshest of discovery sanctions and that the matter should be governed strictly by application of our precedents involving discovery sanctions. That was true of the situation in *Tisdale v. Howard Univ.,* 697 A.2d 53 (D.C.1997), where a motions judge moved directly from his denial of a motion to file a Rule 26(b)(4) statement out of time to the granting of a motion for summary judgment for lack of expert medical testimony of the type proffered. In contrast, however, the connection in this case was not so direct. The trial court here made a straightforward ruling on a motion for summary judgment in the face of an opposition which asserted that appellant could make her case without expert testimony or by cross-examining the hospital's witnesses and did not refer to the motion for enlarge-

ment of time for discovery. Thus, in a sense, the appellant appeared to invite the trial court to rule on the motion for summary judgment on its merits in isolation from the request to reopen discovery.

■ Although this context distinguishes this case from those in which the trial court's grant of judgment or dismissal is more immediately a discovery sanction, we recognize that if the court had granted appellant's discovery motion, it almost certainly would have denied summary judgment. Thus, when the trial court considers on remand whether appellant has established good cause and excusable neglect for failure to adhere to the scheduling order, it should take into account the factors this court has identified in cases dealing with imposition of discovery sanctions. In *Weiner v. Kneller,* 557 A.2d 1306 (D.C.1989), decided before the Superior Court adopted its more rigorous civil scheduling practices, we stated that the party seeking to gain the admission at trial of expert testimony improperly omitted from a Rule 26(b)(4) statement must bear the burden of satisfying a preponderance of the following:

> (1) whether allowing the evidence would incurably surprise or prejudice the opposite party;
>
> (2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;
>
> (3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully;
>
> (4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and
>
> (5) the impact of excluding the proposed testimony on the completeness of information before the court or jury.

*Id.* at 1311–12. *See also Abell v. Wang,* 697 A.2d 796, 801 (D.C.1997); *Tisdale, supra,* 697 A.2d at 54 n. 1.[6] The development of this list of factors represented an attempt to strike a balance between the "concern for judicial economy" and the "strong judicial and socie-

---

**6.** It is worth noting that while the case in which the list of relevant factors was first developed, *Weiner, supra,* dealt with a midtrial ruling on

admissibility of matters omitted from discovery, *Abell* and *Tisdale* dealt with pretrial rulings.

tal preference for determining cases on the merits." *Abell, supra,* 697 A.2d at 800 (citing *Johnson v. Lustine Realty Co.,* 640 A.2d 708, 709 (D.C.1994)). *Id.* The list is not exclusive. The trial court may consider other factors that affect the balance in question, taking into account the status of the case at the time of the request to reopen. For example, the third factor's reference to failure to comply with "evidentiary rules" does not preclude the court from considering failure to comply with other procedural requirements. Similarly, the fourth consideration can be expanded to consider the orderliness and efficiency of not only the trial itself but also the court's overall handling of the case and, in appropriate situations, of the court's calendar. In particular cases or circumstances, other factors may come into play.[7]

Upon reviewing the performance of both parties on remand, the trial court may determine that a sanction, even the sanction of denying the motion and thus leaving summary judgment in place, is warranted. Within the analysis of "willfulness," for example, the court may consider the reasonableness of the party's explanation for failing to meet the deadline, as well as any pattern of noncompliance. *See Abell, supra,* 697 A.2d at 802–03 (explaining that the plaintiff in that case "had no prior history as a dilatory plaintiff"). In addition, when considering whether allowing the evidence would incurably surprise or prejudice the opposing party, the court may consider the behavior of the opposing party in complying with scheduling orders. Parties who have missed deadlines and been lax in complying with the scheduling orders themselves may have a difficult time convincing the court that they will be prejudiced by a delay caused by the opposing party, while parties who have been diligent in maintaining

the schedule will have a stronger argument for prejudice. *See Abell, supra,* 697 A.2d at 802 ("[T]he fact that defendants filed their own witness list late further mitigates the prejudice attributable to [plaintiff].").

Finally, as we explained in *Abell,* although "the trial court still must consider 'the totality of circumstances' of each case," the more rigorous and formal track on which civil cases are now placed allows "the trial court [to] accord greater weight than previously allowed for prejudice caused by delay to the overall administration of justice." *Id.* (citing *Van Man v. District of Columbia,* 663 A.2d 1245, 1248 (D.C.1995)). As this court has explained,

> [n]oncompliance with court orders and rules may cause the system to bog down and may adversely affect other litigants. When a plaintiff is personally responsible for this type of delay, he or she prejudices not only the defendant but also the ability of other persons—persons that are doing what is necessary to follow the rules—to utilize the system.

*Perry v. Sera,* 623 A.2d 1210, 1219 (D.C.1993) (referring to a plaintiff's failure to comply with discovery orders).

## IV.

In sum, the factors we identified in *Weiner* and the others we have discussed above should be taken into account by the trial court in considering appellant's discovery motion on remand. In striking the balance in the context of this particular case between the concern for judicial economy and the preference for determination on the merits, the court can take specifically into account whether the appellant is able to satisfy the good cause and excusable neglect requirements for amending the scheduling order.

---

7. In *Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507 (10th Cir.1990) the United States Court of Appeals for the Tenth Circuit identified a number of factors to be considered in deciding whether discovery should be reopened. They are:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Sil–Flo, Inc., supra,* 917 F.2d at 1514 (quoting *Smith v. United States,* 834 F.2d 166, 169 (10th Cir.1987)). The opinion emphasized the deference to be paid the trial court's discretionary decision, stating that it would not be disturbed unless the appellate court had a definite and firm conviction that the trial court had made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

The court may also consider appellant's failure even to mention the relevance of her pending discovery motion in opposing the summary judgment she wishes reconsidered and her failure to appear at the hearing on the motion for reconsideration. These failures fall under the general rubric of impairing the orderliness and efficiency of the proceedings. They distinguish this case from those in which a court simply denies a discovery motion with predictably fatal results for a party's case, and detract somewhat from the strength of appellant's request for relief.

Should the trial court decide to grant appellant leave to reopen discovery, it will be "free to craft any appropriate sanction authorized by Super.Ct.Civ.R. 37." *Abell, supra,* 697 A.2d at 804 n. 5, and impose it upon appellant.

Accordingly, the trial court's order denying appellant's motion for reconsideration is vacated, and this case is remanded to the trial court for consideration of appellant's motion to "extend time for discovery," reconsideration of its order granting appellee's motion for summary judgment, and any further proceedings consistent with this opinion.

*So ordered.*