Bisi DADA, Appellant,

v.

CHILDREN'S NATIONAL MEDICAL
CENTER, Appellee.

No. 99–CV–570.

District of Columbia Court of Appeals.

Argued Oct. 10, 2000.
Decided Nov. 2, 2000.*

John G. Harnishfeger, Washington, DC, for appellant.

Adam W. Smith, with whom Gary W. Brown, Fairfax, VA, was on the brief, for appellee.

Before FARRELL and GLICKMAN, Associate Judges, and GALLAGHER, Senior Judge.

PER CURIAM:

Appellant Bisi Dada, as mother and next friend of Magnus Dada ("Magnus"), a minor, challenges the ruling of the trial court denying appellant's motion to reopen discovery and to reconsider summary judgment. Appellant contends that the court

---

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published by direction of the court.

abused its discretion in denying the discovery motion and refusing to permit appellant to amend her Rule 26(b)(4) statement. Appellant claims that a revised 26(b)(4) statement would have enabled her to establish a prima facie case of medical negligence and, thus, survive appellee, Children's National Medical Center's ("Children's Hospital's" or "appellee's"), motion for summary judgment. Specifically, appellant argues: (1) that the trial judge erroneously applied the factors set forth by this court in *Weiner v. Kneller*, 557 A.2d 1306 (D.C.1989), and (2) that Magnus' minor status was not appropriately considered by the trial court. Under this court's instructions in *Dada v. Children's Nat'l Med. Center*, 715 A.2d 904 (D.C.1998) (hereinafter *"Dada I "*), and the deferential standard of review, the trial court's ruling should not be disturbed. Therefore, we affirm.

In her underlying complaint, appellant alleges that negligent care provided by the staff of Children's Hospital proximately caused injuries to the left arm of her minor daughter Magnus. On July 1, 1996, over a month after the scheduling order deadline and after appellee had filed its own 26(b)(4) statement, appellant's trial counsel, Ms. Maryrose Ozee Nwadike, filed appellant's 26(b)(4) statement, identifying Dr. Nixon Asomani, Dr. Cedric Poku–Dankwah, and Dr. Chester Haverback as experts. Appellant's 26(b)(4) statement, however, set forth nothing regarding the experts' expected causation and/or standard of care testimony.[1]

Pursuant to the scheduling order, discovery closed on August 9, 1996. On August 23, 1996, Children's Hospital moved for summary judgment contending that appellant was incapable of producing the expert testimony necessary to sustain a medical malpractice action. Supporting its motion, Children's Hospital submitted affidavits from Dr. Poku–Dankwah and Dr. Asomani as well as a medical report from Dr. Haverback, revealing that they would not be serving as causation and/or standard of care experts.

On September 4, 1996, appellant's counsel filed an opposition to appellee's motion for summary judgment as well as a separate motion for leave to extend discovery. In the discovery motion, Ms. Nwadike expressed surprise at the affidavit testimony of appellant's purported experts. In her opposition to appellee's motion for summary judgment, however, Ms. Nwadike neglected to reference her contemporaneous discovery motion. On September 10, 1996, the trial judge granted appellee's motion for summary judgment.

On September 21, 1996, appellant filed a motion to reconsider. Therein, appellant's counsel maintained that she was shocked by the affidavits of her experts and argued that those affidavits constituted newly discovered facts that warranted vacating the order granting summary judgment.[2] The trial court scheduled a hearing on the motion to reconsider, but Ms. Nwadike failed to appear.[3] On November 6, 1996, the trial court issued an order denying the motion to reconsider.

On August 13, 1998, this court vacated the order denying the motion to reconsider, and remanded for consideration and disposition of the motion to reopen discovery. *See Dada I, supra*, 715 A.2d at 911. After a briefing period, the trial court held an evidentiary hearing on February 11, 1999, pursuant to this court's decision in *Dada I*. At the hearing, the trial court heard evidence from Ms. Nwadike, Dr.

---

**1.** Appellant's 26(b)(4) statement simply stated that each doctor, "will testify based upon his education, experience, training, and his personal examination of [Magnus]."

**2.** Ms. Nwadike also indicated that she had located another expert.

**3.** Apparently, Ms. Nwadike arrived approximately an hour and ten minutes after the hearing's scheduled time.

Asomani, Dr. Poku–Dankwah, and Dr. Haverback.[4]

While the formal order was not filed until April 22, 1999, the trial judge effectively issued her decision from the bench immediately following the evidentiary hearing on the motion to reopen discovery on February 11, 1999. The trial judge ruled that additional discovery was not warranted as appellant failed to satisfy the required showing of good cause and excusable neglect. Appellant challenges this determination.

In *Dada I*, we provided the trial judge with the legal framework for determining appellant's discovery motion on remand. Therein, this court stated:

> On remand, the trial court will be called upon to decide whether, as of the time the court was considering the hospital's motion for summary judgment and the subsequent motion for reconsideration, *appellant had made the required showing of good cause* for modification of the court's scheduling order. The time for completing discovery, including the filing of Rule 26(b)(4)(2) statements, had expired before appellant filed her "motion to extend time for discovery." Accord-

ingly, pursuant to Super. Ct. Civ. R. 6(b), in order to qualify for the relief she sought, *it will be also incumbent upon appellant to satisfy the trial court that appellant's failure to act in timely fashion was due to excusable neglect.*

*Dada I, supra*, 715 A.2d at 908 (emphasis added).

In determining the existence of good cause and excusable neglect, we directed the trial court to the factors outlined in *Weiner, supra*.[5] In *Dada I*, this court also indicated that, "[t]he trial court may consider other factors that affect the balance in question, taking into account the status of the case at the time of the request to reopen." *Id.* at 910.[6]

■ When determining the propriety of a decision on a discovery motion the, "standard of review is ... deferential, and in the absence of a showing of abuse of discretion or legal error, it is [this court's] duty to sustain the motions judge's disposition." *Haqq v. Dancy–Bey*, 715 A.2d 911, 913 (D.C.1998); *see Perry v. Sera*, 623 A.2d 1210, 1217–18 (D.C.1993).[7]

■ Appellant argues that the trial judge erroneously applied the *Weiner* fac-

---

4. In addition, the trial court considered the deposition transcript of Patrick M. Pickett, former defense counsel for Children's Hospital.

5. In *Weiner*, this court stated that a party seeking to gain admission of expert testimony improperly omitted from a Rule 26(b)(4) statement must satisfy the preponderance of the following:

> (1) whether allowing the evidence would incurably surprise or prejudice the opposite party;
> (2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;
> (3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully;
> (4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and
> (5) the impact of excluding the proposed testimony on the completeness of information before the court or jury.

*Dada I, supra*, 715 A.2d at 909 (quoting *Weiner, supra*, 557 A.2d at 1311–12).

6. For example, the trial court could have taken into account appellant's failure to comply with other court rules, as well as the effect of appellant's actions on the orderliness and efficiency of the court's handling of the case and on the court's own calendar. *See Dada I, supra*, 715 A.2d at 909. Also, in analyzing willfulness, the trial court could have properly considered the reasonableness of appellant's explanation for failing to meet the discovery deadline and any pattern of non-compliance. *See id.*

7. This court has also indicated that dismissal, "should be adopted as a remedy only in extreme circumstances and only after the trial court has considered lesser sanctions." *Wolfe v. Fine*, 618 A.2d 169, 173 (D.C.1992). If the trial court fails to state its reasons for choosing dismissal over less severe sanctions, appellate scrutiny will be stricter. *See Perry, supra*, 623 A.2d at 1218.

tors. It is beyond dispute that the trial court discussed, analyzed, and evaluated each factor. Because the trial court explicitly found that Children's Hospital would not be significantly prejudiced by granting the discovery motion and, conversely, that appellant would be incurably prejudiced by denying it, her ruling was predominantly based on: (1) the negative impact of Ms. Nwadike's conduct on the administration of the court system, and (2) the willfulness of Ms. Nwadike's non-compliance with the court's scheduling order and other rules.

In *Dada I,* we observed that the trial court may consider appellant's failure to comply with other court rules, as well as the effect of appellant's actions on the orderliness and efficiency of the court's handling of the case and on the court's own calendar. *See Dada I, supra,* 715 A.2d at 909. Appellant argues that any adverse impact on the orderliness of this case is substantially mitigated by the fact that this case was far from trial and that the injured litigant was a minor.[8] An examination of the record, however, reveals that Ms. Nwadike failed to timely respond to appellee's discovery requests, filed appellant's 26(b)(4) statement late, ignored the substantive requirements of 26(b)(4), failed to reference the discovery motion in appellant's motion for summary judgment, and failed to appear at the hearing on her own motion for reconsideration. Accordingly, the trial court did not abuse its discretion by ruling that, "[Ms Nwadike's] conduct in litigating this case undisputably affected this Court's ability to handle the case, to handle its calendar and to enforce its rules."

With respect to *Weiner's* willfulness factor, we have stated, "[w]ithin the analysis of 'willfulness,' ... the [trial] court may consider the reasonableness of the party's explanation for failing to meet the deadline, as well as any pattern of noncompliance." *Id.* at 910. In this context, willfulness is defined as, "[a] conscious or intentional failure to act." *District of Columbia v. Greene,* 539 A.2d 1082, 1084 (D.C.1988) (citations omitted).

Despite Ms. Nwadike's other instances of non-compliance, appellant argues that Dr. Poku–Dankwah's hearing testimony clearly reveals that Ms. Nwadike was not aware of Dr. Poku–Dankwah's refusal to act as an expert witness until she received appellee's motion for summary judgment.[9] Even if this is so, appellant's position overlooks that Ms. Nwadike chose to ignore her obligation to develop and divulge the substance of Dr. Poku–Dankwah's opinions, let alone the substance of the opinions of the other two named experts.[10] The record reveals that Dr. Poku–Dankwah neither discussed the specific medical basis for his expert testimony with Ms. Nwadike nor issued a report to her before the close of discovery. Indeed, Ms. Nwadike's neglect of scheduling order deadlines and court rules, violation of Rule 26(b)(4)'s substantive requirements, and failure to communicate with, and cultivate a specific opinion from, her own expert witness, all combine to provide ample support for the trial court's decision. Under these facts, therefore, it was not an abuse of discretion for the trial judge to rule that, "the conduct of the prior counsel [was] totally disingenuous. She ... clearly and intention-

8. *See* D.C.Code §§ 12–301 and –302 (1995) (preserving limitations period for claims by minors).

9. At the hearing, Dr. Poku Dankwah testified: (1) that he had communicated to Ms. Nwadike that he would be an expert witness in the case, and (2) that Ms. Nwadike did not know that he would be withdrawing from the case until after appellee's motion for summary judgment.

10. In fact, the record reflects that neither Dr. Asomani nor Dr. Haverback agreed to provide standard of care and/or causation testimony. At the hearing, Ms. Nwadike admitted that she would not have called upon Dr. Asomani to provide standard of care and/or causation testimony. Ms. Nwadike further admitted that Dr. Haverback's report exclusively concerned future medical expenses and any trial testimony would have been limited thereto.

ally mislead [sic] this Court and defense counsel on more than one occasion...."

 Appellant next argues that the trial judge did not give appropriate consideration to Magnus' minor status. While normally conduct of counsel is imputed to clients, this court has consistently recognized that, "the trial court should rule so as to preserve the rights of a minor who would otherwise suffer a significant loss due entirely to the default of some representative who was supposed to be, but was not, acting in the minor's best interest." *Godfrey v. Washington*, 653 A.2d 371, 373–74 (D.C.1995). *See Haqq, supra*, 715 A.2d at 914 (remanding case for reconsideration of sanction barring trial testimony of minor plaintiff's expert because judge failed to take into account, "the court's duty to provide special protection to litigants who are minors."); *Jones v. Roundtree*, 225 A.2d 877, 878 (D.C.1967) (reversing dismissal of minor's personal injury claim, despite the inexcusable neglect of counsel).

 In *Haqq*, we also recognized, however, that, "in cases brought on behalf of minor plaintiffs, as in all cases, the judge retains substantial discretion in dealing with improper conduct by attorneys ... even if these sanctions have negative consequences for the children whose lawyers have let them down." *Haqq, supra*, 715 A.2d at 914 n. 4. The trial court's discretion on these matters is also supported by our decision in *Dada I*, which remanded the instant case back to the trial court in lieu of making a final determination. In her ruling, the trial judge stated:

> [B]ut I would like it clearly understood that the Court is well aware of [*Godfrey* and *Haqq*]. The Court of Appeals has made abundantly clear that it is loathed to impute acts and admissions of counsel to a client where the cause of action is that which belongs to a minor. And the Court understands that it has a special duty to protect minors. But be that as

it may, the Court in *Haqq* in footnote four recognized that this Court ... retain[s] substantial discretion in dealing with improper conduct by attorneys even if these sanctions have negative consequences for the children.

\* \* \*

> [T]he Court has balanced the factors as best as it can, including the fact that this involves a minor.... So the Court feels strongly that to permit the reopening of discovery at this late date would be effectively to say because a minor is involved ... there need be no showing of good cause or excusable neglect.

This discourse reveals that the trial judge appropriately considered and weighed the minor status of the injured litigant. *See id.* at 914. The trial court's ruling, therefore, was entirely consistent with the guidance provided in *Dada I* and the legal principles in *Haqq*.[11]

*Affirmed.*

---

11. It should be noted that some facets of this proceeding are disturbing. We point out, however, that litigants whose rights are harmed by attorneys are not without legal recourse. *See Salgado v. General Motors Corp.*, 150 F.3d 735, 743 (7th Cir.1998).