Candace FRENCH, Appellant,

v.

Louis LEVITT, M.D., et al., Appellees.

No. 09–CV–94.

District of Columbia Court of Appeals.

Argued April 29, 2010.

Decided July 8, 2010.

Anitha Johnson, Hyattsville, MD, for appellant.

Alfred F. Belcuore, Washington, DC, for appellee Louis Levitt, M.D.

Andrew J. Spence, with whom Stephen L. Altman, Fairfax, VA, was on the brief for appellees Paul G. Ruff, IV, M.D. and Metropolitan Institute for Plastic Surgery, PLLC.

Before WASHINGTON, Chief Judge, THOMPSON, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant Candace French sued appellees Dr. Louis Levitt, M.D., Orthopedic Medicine & Surgery/Drs. Levitt, Danziger and Scheer, Dr. Paul Ruff, M.D., and Metropolitan Institute for Plastic Surgery, PLLC, for damages in Superior Court, alleging that the appellees had failed to diagnose a bone infection in her left foot following an ankle fusion performed in May 2004 by Dr. Levitt. Appellant alleged that the failure of the appellees to diagnose her condition required her to receive a below-the-knee amputation in January 2005. Shortly before the trial date, appellant acknowledged that she would be unable to meet her burden of proof because she did not have a medical expert. The court then granted appellees' motion to dismiss. Appellant brings this appeal from the order granting dismissal. We affirm.

## I.

In May 2007, appellant identified Dr. Sheldon Stein, M.D., and Dr. Elliot Heller, M.D., as her expert witnesses, and later represented that both experts would testify that both Dr. Levitt and Dr. Ruff had breached the standard of care and proximately caused appellant's injuries. The parties agreed in March 2008 to a trial date of January 26, 2009. Approximately five weeks before trial, on December 17, 2008, appellant filed an "Emergency Motion to Allow for Additional Limited Discovery" in which she asked the court to allow appellant to designate an expert to replace Dr. Stein because he would "not be able to fulfill his duties as Plaintiff's expert." Counsel for appellant stated that Dr. Stein's privileges at the hospital in Guam, where he had recently re-located,

"may have ... been suspended," that Dr. Stein had moved to Israel, and "that he may not be available to appear" at trial. In addition, appellant's counsel stated, "it appears that the U.S. Department of Justice recently filed a civil action against Dr. Stein alleging fraud and/or tax evasion." Initially, the motion was denied because of a procedural defect, but was refiled on January 7, 2008. At a scheduled pretrial conference on January 8, 2009, the court denied appellant's emergency motion. At this conference, appellant also withdrew Dr. Heller, her other expert medical witness. During a conference call that occurred four days later, counsel for appellant conceded that "we are unable to meet our burden of proof because we don't have an expert to go forward on the case." The court then granted the defendants' motion to dismiss. Appellant brought this timely appeal.

## II.

■ Appellant argues that the trial court abused its discretion by denying what she styled as her motion for "additional limited discovery," which was in substance a motion to designate a new expert and for a continuance, and also erred by subsequently granting appellees' motion to dismiss. Appellant contends that the court did not properly apply the factors set forth by this court in *Weiner v. Kneller*, 557 A.2d 1306, 1311–12 (D.C.1989), that must be considered when the designation of additional expert testimony is requested, and that the court erred in denying her

motion, as it was based on good cause and excusable neglect.[1] "When determining the propriety of a decision on a discovery motion the standard of review is deferential, and in the absence of a showing of abuse of discretion or legal error, it is this court's duty to sustain the motions judge's disposition." *Dada v. Children's Nat'l Med. Ctr.*, 763 A.2d 1113, 1115 (D.C.2000) [*Dada II* ] (internal quotation marks and citations omitted).

We preface our analysis of the trial court's consideration of the *Weiner* factors with the observation that after *Weiner* was decided, this court took note of changes in Superior Court civil rules that were adopted to reduce delay in civil trials that were prejudicial not only to the opposing party, but also to the administration of justice. *See Abell v. Wang*, 697 A.2d 796, 800 (D.C.1997). We later observed in *Dada v. Children's Nat'l Med. Ctr.*, 715 A.2d 904, 910 (D.C.1998) [*Dada I* ], quoting *Abell, supra*, 697 A.2d at 802, that "although 'the trial court still must consider the "totality of the circumstances" of each case,' the more rigorous and formal track on which civil cases are now placed allows 'the trial court [to] accord greater weight than previously allowed for prejudice caused by delay to the overall administration of justice.' "

■ The record reflects that the court undertook an in-depth and reasoned analysis of the *Weiner* factors. Before analyzing the five *Weiner* factors and ruling on appellant's motion, the court listed the factors, referring explicitly to the first three,

1. We stated in *Weiner, supra,* that when the trial court considers whether a party has established good cause and excusable neglect for failure to include supplemental testimony of a designated expert witness in a timely Super. Ct. Civ. R. 26(b)(4) statement, it should take into account the following factors: (1) whether allowing the evidence would incurably surprise or prejudice the opposite party; (2) whether excluding the evidence would in-

curably prejudice the party seeking to introduce it; (3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully; (4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and (5) the impact of excluding the proposed testimony on the completeness of information before the court or jury. *Id.* at 1311–12.

and more generally to the last two. The trial court proceeded to weigh the prejudice to both parties, emphasizing the fact that appellant had known since October 2008 that there were problems with Dr. Stein, that the defendants had incurred expenses related to this specific expert and would have to incur additional expenses if the trial were to be delayed, that appellant was entitled to her day in court, that Drs. Levitt and Ruff had a right to get to trial expeditiously, and that appellant's motion came only a few weeks before the long-scheduled trial date.

The record reflects that Drs. Levitt and Ruff had already deposed Dr. Stein and had conducted a *de bene esse* deposition of a defense expert, Dr. George Cierny, M.D., who specifically rebutted Dr. Stein's theories of liability and opinions. In light of this trial preparation by appellees and the appellant's inability to proffer a new expert to the court approximately five weeks before trial, granting appellant's motion would have required the appellees to depose again their own witness or witnesses, would have required both appellee physicians to schedule additional time and expense for a delayed trial, and would potentially subject them to different allegations of negligence at a late stage of the litigation. *See Young v. Interstate Hotels & Resorts,* 906 A.2d 857, 862–64 (D.C.2006) (argument that prejudice to opposing party could be cured by allowing additional time for deposition of "an as yet unnamed expert witness" rejected where motion to amend pretrial order was filed three months prior to trial). Thus, as the trial court concluded, Drs. Levitt and Ruff would suffer considerable prejudice if the court were to grant the appellant's motion.

The trial court then considered "the reasonableness of the party's explanation for failing to meet the deadline, as well as any pattern of noncompliance." *Dada I, supra,* 715 A.2d at 910. The court was not convinced by appellant's explanation that Dr. Stein had suddenly become unresponsive and unreliable, since counsel had been apprised of issues relating to Dr. Stein months before she filed her motion with the court.[2] In addition, the court noted that Dr. Stein had testified at his deposition that he does not testify at trials, but rather prefers to give trial testimony by *de bene esse* deposition. The record makes clear that appellant had ample notice to retain a suitable expert in a timely manner since she had known, or should have known, of Dr. Stein's statement to the defense, his recent but short-lived relocation to distant Guam, and his legal troubles.

The court also mentioned that "[t]here have been numerous motions in the review of the case by the defense to get the plaintiff to comply with certain discovery obligations and with the rules." *See Young, supra,* 906 A.2d at 863 ("the record makes clear that appellant was not diligent in managing this litigation by ascertaining his theory of the case and identifying an appropriate expert witness who could testify"). In addition to late filings by appellant, the record reflects that the court ordered appellant to provide (1) authorization to obtain appellant's medical information from her treating physician, (2) information about Dr. Stein's research

2. The court stated that the problems with Dr. Stein's credentials and his unresponsiveness to counsel, "were apparent in October.... That was raised in the [October 2, 2008] pretrial about the possibility that his privileges had been revoked or may have been revoked or were going to be revoked because the defense was seeking information about that."

The court added that appellant "should have, could have, and was clearly aware that there were issues involving her key expert at the time of the last pre-trial, and that at that time the plaintiff should have been working diligently to either secure Dr. Stein's presence in Court or make other arrangements particularly since he's in a location far away."

and experience, (3) information about the opinions of appellant's expert economist, and (4) an opportunity for the defendants to re-depose appellant herself. These orders were met with inaction by appellant without adequate explanations for her failure to comply. Indeed, after the final pretrial conference in October 2008, the trial judge ruled that appellant's expert economist would not be allowed to testify because appellant had failed to supply the basis for his opinions. *See Dada II, supra,* 763 A.2d at 1116 (Appellant's "neglect of scheduling order deadlines and court rules, violation of Rule 26(b)(4)'s substantive requirements, and failure to communicate with, and cultivate a specific opinion from, her own expert witness, all combine to provide ample support for the trial court's decision.").

Finally, the court noted that if it were to grant a continuance and allow for appellant to find a new expert, the case would probably go on for almost another year. The court stated that "the efficiency of the case load and so on should not be the most important factor," but the inevitable delay that would result from granting appellant's motion would require additional time and expense for all parties. The court ultimately weighed all of the *Weiner* factors to come to the conclusion that the appellant's motion to designate a new medical expert and for a continuance should be denied. This decision has strong support in the record. We cannot say that the court erred in its application of the factors or abused its discretion in its denial of appellant's motion.

■ Once the court denied appellant's motion, appellant's counsel conceded during the subsequent January 12 conference call that without an expert, she could not meet her burden of proof. This statement by counsel reflects a tactical decision on the part of appellant. Because the court permissibly exercised its discretion to deny the emergency motion for additional discovery, and because appellant decided that she could no longer proceed to trial, the court properly granted the defendants' motion to dismiss. *See Moorehead v. District of Columbia,* 747 A.2d 138, 148 (D.C. 2000) (after properly denying plaintiff's motion for an extension of time to designate an expert, and "because [plaintiff] concede[d] that his claim against the District ... could not survive summary judgment without expert testimony, the court properly dismissed [the claim]"). The dismissal was not a sanction applied by the court, but rather a ruling based upon appellant's concession.

Appellant argues that a lesser form of sanction should have been considered but, because she had not identified a new expert, the court was not acting at a stage of the proceedings at which it was required to consider alternative sanctions. As we have noted, the dismissal was not entered as a sanction, but was a ruling based upon the appellant's concession, doubtless made in light of the posture in which she found herself because of her failure to make discovery and comply with deadlines. *See District of Columbia v. Kora & Williams Corp.,* 743 A.2d 682, 690–91 (D.C.1999) (plaintiff's argument that prejudice from "belated disclosure of [expert] opinions" could be mitigated by a lesser sanction "fails ... in the absence of exhibits or even a proffer of opinion by either witness ...").

In light of the foregoing, we hold that the court did not abuse its discretion by denying appellant's motion and did not err by granting the defendants' motion to dismiss. Accordingly, the order is hereby affirmed.

*So ordered.*