**Jeffrey I. ZUCKERMAN, Appellant,**

v.

**Vincent VANE, Appellee.**

**Nos. 02–CV–11, 02–CV–98.**

District of Columbia Court of Appeals.

Argued Nov. 8, 2002.
Decided Dec. 19, 2002.

Jeffrey I. Zuckerman, pro se.

David F. Grimaldi, Washington, DC, for appellee.

Before STEADMAN, FARRELL, and RUIZ, Associate Judges.

FARRELL, Associate Judge:

In this suit for personal injury arising from the intersection collision of two motor vehicles, the trial judge dismissed the complaint with prejudice because of plaintiff/appellant Zuckerman's failure to respond to discovery. The primary issues before us are (1) whether Zuckerman's response to interrogatories requesting documentation of the accident and his injuries, medical expenses, and economic damages by offering to make such records available for defendant Vane's inspection satisfied Super. Ct. Civ. R. 33(d); and (2), if not, whether that default nevertheless was sufficient to justify dismissal with prejudice in the circumstances of this case. We hold that, although Zuckerman did not comply with the duty of specificity imposed by

Rule 33(d), that failure did not justify the "lethal" sanction of dismissal, *Solomon v. Fairfax Vill. Condo. IV Unit Owner's Ass'n,* 621 A.2d 378, 379 (D.C.1993) (per curiam), absent clearer evidence that his conduct was willful and that Vane was prejudiced as a result.

## I.

In a complaint filed on March 26, 2001, Zuckerman alleged that a motor vehicle driven by Vane had run a red light and struck Zuckerman's car, causing him permanent injury and damage to his car. Vane answered the complaint, and the court issued a scheduling order establishing a series of discovery deadlines, including: August 29 (for discovery requests, the exchange of witness lists, and any Rule 26(b)(4) expert witness statement by Zuckerman); October 29 (the close of discovery); December 29, 2001 to January 29, 2002 (filing and decision on motions, and alternative dispute resolution); and sixty days thereafter (the pretrial conference). On April 25, 2001, Vane served interrogatories and document requests on Zuckerman but received no response to them, prompting him to send three letters between May and July demanding compliance. Zuckerman replied in late July by asserting that he could not locate the requests and asking for new copies of them. On August 16, still having received no substantive responses, Vane moved the trial court to compel discovery under Rule 37(a). Zuckerman responded apologetically and stated that he expected to complete his responses by September 17. On September 10, the trial court ordered him to serve his interrogatory answers and re-

sponses to the document requests by September 20.

Zuckerman filed his responses on September 20 as ordered. In them, he stated his version of the collision in detail, identified the eyewitnesses he intended to call at trial, described his resultant injuries,[1] and listed the physicians he had consulted for treatment and intended to call as witnesses. But in response to the requests for documentation of his injuries and "expenses and other economic damages," he did not produce any reports or other documents or attempt to summarize their contents. Instead he asserted that all such documentation—including photographs of the scene, written reports of his doctors, and x-rays and an MRI scan—were in his possession or the possession of his doctors, and that "[p]ursuant to Rule 33(d), he would afford [d]efendant reasonable opportunity, at a mutually convenient time and place, to examine ... or inspect such documents[ ] and to make copies, ... abstracts or summaries."

Unsatisfied with these responses, Vane moved the trial court to dismiss the complaint as a sanction, arguing that Zuckerman's failure to document his injuries with medical reports or substantiate his claim of lost earnings left Vane "still at a complete loss as to what damages the plaintiff is claiming in this matter." Zuckerman replied partly by stating that he had placed all such documents at Vane's disposal under Rule 33(d), but that neither Vane nor his attorney had taken any steps to inspect and copy them. The trial judge initially regarded Vane's motion to dismiss as unopposed, and dismissed the suit "for failure to comply with this Court's Order of September 10, 2001 and failure to oppose

---

1. "I sustained various injuries to my neck, chest, wrist and leg. I also suffered severe emotional distress. The injuries to my chest and leg have apparently healed, and therefore apparently were temporary. The injuries to my neck and wrist have not completely healed, and may be permanent."

the request for dismissal." When Zuckerman informed the court that he had opposed the motion, the court revised its order by stating that the complaint "shall remain dismissed due to plaintiff's failure to comply with his discovery obligations."

## II.

In *Chapman v. Norwind,* 653 A.2d 383 (D.C.1995), this court summarized the governing principles as follows:

> This court will reverse a dismissal only upon a showing of an abuse of discretion by the trial court. The dismissal of a complaint for failure to adhere to a discovery order is among the sanctions available to the trial court under Super. Ct. Civ. R. 37(b). Normally, a trial court, however, may impose such a heavy sanction only when "severe circumstances" are present. This court considers two factors in determining whether "severe circumstances" exist: "(1) whether the opposing party has suffered any prejudice due to the failure to respond to discovery requests and (2) whether the failure was 'willful'—defined as a conscious or intentional failure to act as opposed to accidental or involuntary noncompliance." Moreover, the trial court must consider less severe sanctions before dismissing a case.

*Id.* at 386 (citations omitted).

Zuckerman first contends that the record contains no indication that the trial court considered lesser sanctions, such as attorneys fees, before dismissing the complaint. Similar to what took place in *Chapman, supra,* however, the trial court took express note of Vane's motion arguing for dismissal or "[a]lternatively" for lesser sanctions such as a restriction on proof, and of Zuckerman's opposition thereto. Although, as in *Chapman,* "it would have been preferable that the judge's order itself contain some affirmative indication that [s]he had considered less severe sanctions available under ... [Rule] 37(b)," *id.* at 388, we conclude—as did the court in *Chapman*—that there is sufficient indication in the record that the trial judge believed lesser sanctions to be inadequate.

■ Zuckerman's weightier argument is that the record does not support the trial court's implied finding that he willfully—*i.e.,* consciously or deliberately—disregarded his discovery obligations, in light of his good faith belief that his response complied with Rule 33(d)'s established means for producing all of the requested documentation in this relatively uncomplicated automobile collision case. He points out that over a month before the scheduled close of discovery, he placed all of the relevant documents at Vane's disposal for examination and copying, but that Vane never availed himself of the opportunity afforded to inspect them at Zuckerman's office. Vane counters that a simple invocation of Rule 33(d) in response to interrogatories and document requests is not good faith discovery, because it ignores the specification requirement of that rule designed to make the information as readily available to the requester as to the responder.

The rule states in relevant part:

> [w]here the answer to an interrogatory may be derived or ascertained [from an examination ... or inspection of] the business records of the party upon whom the interrogatory has been served ..., and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford the party serving the in-

terrogatory reasonable opportunity to examine ... or inspect such records and to make copies, compilations, abstracts or summaries. *A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.*

Rule 33(d) (emphasis added). This court has not expressly addressed the rule's specification requirement, but its meaning and significance are not obscure.[2] If, as the rule requires, the party serving the interrogatory is to receive functionally the same access to the records as the party responding, then the latter

> may not simply refer generically to past or future production of documents. [The party] must identify in [its] answers to the interrogatories specifically which documents contain the answer. Otherwise [it] must completely answer the interrogatories without referring to the documents.... The answer must specify, without qualification, which documents contain the answer.

*Pulsecard, Inc. v. Discover Card Servs., Inc.,* 168 F.R.D. 295, 305 (D.Kan.1996); *see also* MOORE'S FEDERAL PRACTICE § 33–105[3], at 33–79 (3d ed.1997) (noting the interpretation of rule by one court as requiring the responding party "to list exact documents or even indicate the page or paragraphs that are responsive to the interrogatory"). The specification requirement is meant to deter the practice whereby a responding party "avoid[s] answering hard questions" by generic answers or by "dumping large volumes of unindexed documents" on the party serving the interrog-

atories. *Saleh v. Moore,* 95 F.Supp.2d 555, 561 (E.D.Va.2000).

Zuckerman's answers to the requests for photographs and records documenting the accident and his damages were too generic to give Vane ease of access to them functionally the same as his own. Although he listed his treating physicians and said that their "written reports," as well as "x-rays and an MRI scan," would be available for inspection, he gave no indication of the dates of those reports, their contents, or any other identifying information sufficient to allow Vane to locate them as the documents Zuckerman was relying on to confirm his injuries, either temporary or permanent. Likewise, although referencing "documents" that would establish his "expenses and other economic damages" resulting from the accident, he did not otherwise identify the documents or explain where in them the damages were computed. And his reference to documents memorializing conversations or correspondence with police officers and employees of Vane's insurance company on which he intended to rely had no identifying information other than the names of the persons in question. Zuckerman's assurance at oral argument before us that he would have facilitated the actual inspection process in any way Vane requested is not a substitute for the precise specification the rule requires of where the requested information is contained.

■ The question remains, however, of whether Zuckerman's faulty reliance on Rule 33(d) to excuse his unresponsive answers fairly rises to the level of willful or deliberate disregard of his discovery obligations. On the one hand is the fact that nearly five months after serving interroga-

---

**2.** As neither party disputes that the records in Zuckerman's possession concerning the accident, his medical treatment and expenses, and any economic losses he suffered are "business records" within the meaning of the rule, we assume that is so without deciding the issue.

tories, Vane still did not have the documentation he properly requested, despite an order compelling Zuckerman to comply; he had only the assurance that the medical reports and other documents would be made available for him to examine and copy at a mutually agreeable time. On the other hand, this "simple intersection collision" case (Br. for Vane at 3) in which Zuckerman had listed only a handful of fact witnesses and treating physicians he intended to call[3] did not raise the prospect Rule 33(d) guards against of a party "dumping large volumes of unindexed documents" on the other side. *Saleh,* 95 F.Supp.2d at 561. Zuckerman therefore was not entirely unjustified in believing that Vane would be able to identify, examine, and copy the documents relevant to his requests with minimal difficulty, something Vane declined to attempt.[4] Viewed in this light, Zuckerman's disobedience of the order to comply seems venial, and did not involve the "apparent gross indifference to the rules of the court and to fair treatment of the defendant," *Perry v. Sera,* 623 A.2d 1210, 1219 (D.C.1993), that our decisions require before dismissal with prejudice may be ordered. *See, e.g., Chapman,* 653 A.2d at 386–87 (incomplete answers to interrogatories, delayed production of documents, *and* repeated cancellation of depositions justified finding of willful noncompliance).

We must also consider the matter of prejudice, both to the defendant and to the judicial system. *See Perry,* 623 A.2d at 1219. At the time Zuckerman served his answers, more than a month remained before the scheduled close of discovery, and in the interim neither side—Vane no more than Zuckerman—took steps to schedule depositions. Further, no trial date had been set, and when the judge first dismissed the complaint mediation was still scheduled a month down the road, to be followed—if unsuccessful—by a pre-trial conference sixty days later. In these circumstances, although lesser sanctions might well have been proper for Zuckerman's noncompliance with his obligations, we hold that outright dismissal was disproportionate both to the level of fault he had shown and to the prejudice his conduct caused Vane or the judicial process.

*Vacated and remanded.*

3. Zuckerman listed no expert witnesses subject to the more comprehensive disclosure requirements of Rule 26(b)(4).

4. Contrast this with *Chapman, supra,* in which the defendant Norwind sought to inspect the relevant documents but was misled as to their location by the plaintiff:

Chapman's attorney informed Norwind that all the relevant documents requested were located in Chapman's office and that he should "call Mr. Chapman's office to confirm a date and time to review those files." Norwind's counsel informed Chapman's attorney that he would be calling to confirm a date in order to review the requested documents. Chapman, however, called Norwind's attorney to inform him that the documents were not in his office but rather under the control of his attorney, and it would be useless and a waste of time to come to Chapman's office for an inspection. *Chapman,* 653 A.2d at 387. This conduct, engaged in after the court had ordered Chapman to produce the documents, was part of the basis for the finding of willful noncompliance which this court upheld. *See id.* at 386–87.